BEATTY et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. March 11, 1913.)

No. 1,143.

JURY (§ 19*)—CONDEMNATION PROCEEDINGS BY UNITED STATES—RIGHT TO
TRIAL BY JURY.

    A proceeding by the United States in a federal court to condemn land
for a public use is a suit at common law, within the meaning of Const.
U. S. Amend. 7, and the landowner cannot be deprived of the right at
some stage of the proceeding to have the question of just compensation
determined by a jury, whatever may be the state practice, to which the
court is required to conform as near as may be by Act Aug. 1, 1888, c.
728, § 2, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2517).

    [Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 104–133; Dec.
Dig. § 19.*

    Following state practice, see notes to O'Connell v. Reed, 5 C. C. A.
603; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 393.]

In Error to the District Court of the United States for the Western
District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Condemnation proceedings by the United States against Paul Beatty
and others. From a decree confirming the report of commissioners,
awarding damages to defendants, they bring error. Reversed.

For opinion below, see 198 Fed. 284.

D. C. O'Flaherty, of Richmond, Va., and E. Hilton Jackson, of
Washington, D. C. (O'Flaherty, Fulton & Byrd, of Richmond, Va., on
the brief), for plaintiffs in error.

Barnes Gillespie, U. S. Atty., of Tazewell, Va. (T. J. Muncy, Asst.
U. S. Atty., of Tazewell, Va., on the brief), for the United States.

Before PRITCHARD, Circuit Judge, and DAYTON and SMITH,
District Judges.

SMITH, District Judge. Under the terms of an act of Congress
making appropriations for the support of the army for the fiscal year
ending June 30, 1912, approved March 3, 1911, an appropriation was
provided for the purchase of land accessible to the horse-raising sec-
tion of Virginia for the assembling, grazing, and training of horses
purchased for the mounted service. In pursuance of this statute, a
petition was filed on behalf of the United States, in the District Court
of the United States for the Western District of Virginia, to condemn
certain tracts of land in Front Royal magisterial district, in Warren
county, Va. The practice followed on behalf of the United States
seems to have been governed by section 2 of the act of August 1,
1888 (25 Stat. 357, c. 728 [U. S. Comp. St. 1901, p. 2517]), which
provided that in proceedings to condemn for the United States the
practice, pleadings, forms, and modes of proceedings in cases arising
under the provisions of that act shall conform as near as may be to
the practice, pleadings, forms, and proceedings existing at the time in
like causes in the courts of record in the state within which the Dis-
trict Court is held. The district attorney therefore proceeded accord-
ing to the method prescribed for condemnation proceedings by the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Virginia statutes as set out in section 1105f of the Code of 1910 and the succeeding sections.

Upon the filing of this petition the plaintiffs in error now before the court filed a demurrer, which was overruled by the court below, and thereupon the court ordered that the causes be docketed and five disinterested freeholders, agreed to by the Unitd States and the present plaintiffs in error, should be appointed for the purpose of ascertaining and reporting a just compensation under the terms of the Virginia statute. The commissioners appointed made a report to the court, to which report the plaintiffs in error excepted, among other grounds on the ground that the amount assessed for just compensation was not a sufficient, just, or adequate allowance. On the coming in of these exceptions the trial judge below took the testimony that was offered by the government and the parties, and after hearing the same on the 9th of August, 1912, made its judgment, adjudging that the reports made in each of the cases made by the commissioners should be confirmed. Before, however, this judgment had been made, the plaintiffs in error in the present case had moved the court to impanel a jury to ascertain a proper and just compensation for their lands and to try the issues of fact made up by their exceptions to the commissioners' reports as to what was a just compensation for the land sought to be taken by the government, which motion was refused by the court in its judgment confirming the report of the commissioners.

It is upon the action of the trial judge below upon this point—as we find no error in his rulings anterior to this motion—that this appeal may be said to turn, viz., whether or not the plaintiffs in error were entitled to have the question of what damages should be paid them assessed for them for the compulsory taking of their lands through the medium of a jury. It would seem a startling proposition in the first instance to say that, although the Constitution of the United States forbids the United States laying a fine of a few dollars on a defendant without a trial by jury, and although it forbids the United States confining him for an offense committed without the verdict of a jury, and although the Constitution in a common-law case prevents the recovery by one individual from another, or by the United States from any citizen of the United States, of even a comparatively small amount of money without the verdict of a jury, yet that, in a proceeding for condemnation for public purposes, property of the value of hundreds of thousands of dollars may be taken without the verdict of a jury.

The question here depends entirely upon the language of the Constitution. There are two statutory provisions of Congress to be found, first in section 566 of the Revised Statutes (U. S. Comp. St. 1901, p. 461), which provides that the trial of issues of fact in the District Courts in all causes except cases in equity and cases of admiralty and maritime jurisdiction, and except as otherwise provided in proceedings in bankruptcy, shall be by a jury, and in section 648 (U. S. Comp. St. 1901, p. 525), which provides that the trial of issues of fact in Circuit Courts shall be by jury, except in cases in equity or of admiralty and maritime jurisdiction. These two provisions, however, are statutory, and are anterior to the provisions of the act of August 1,

1888, which provides that the practice shall conform to the state practice. By the statutory practice in the state of Virginia trial of the question of damages in condemnation proceedings is not required to be by jury. If, therefore, the right to a trial by a jury in the federal courts depended upon the statutory provisions in the United States Revised Statutes, they would be repealed by the later statute of 1888, which was also a statutory provision changing the practice of trial of issues of fact in condemnation cases from a trial before a jury to a trial in the method described by the state practice, which might be before commissioners or at least not before a jury.

We are thus cast back to the question whether or not the right of trial by jury in such cases in the federal courts is constitutional, in which event it could not be changed or done away with by any statutory provision. The constitutional provision is contained in the seventh amendment, which provides that the right to a trial by a jury shall be preserved in suits at common law where the value exceeds $20. In Kohl v. United States, 91 U. S. 367, 376 (23 L. Ed. 449), where the case arose upon proceedings for condemnation instituted by the United States in a court of the United States, the court held:

"The right of eminent domain always was a right at common law. It was not a right in equity, nor was it even the creature of a statute. The time of its exercise may have been prescribed by statute; but the right itself was superior to any statute. That it was not enforced through the agency of a jury is immaterial; for many civil as well as criminal proceedings at common law were without a jury. It is difficult, then, to see why a proceeding to take land in virtue of the government's eminent domain, and determining the compensation to be made for it, is not within the meaning of the statute a suit at common law when initiated in a court."

In this case, however, the question arose upon the right of the Circuit Court of the United States to entertain jurisdiction of proceedings for condemnation, and turned upon the point whether such proceedings were suits at law within the meaning of the statute conferring jurisdiction in such suits upon the Circuit Court. The court states the question (91 U. S. 375, 23 L. Ed. 449):

"If, then a proceeding to take land for public uses by condemnation may be a suit at common law, jurisdiction of it is vested in the Circuit Court."

All that the court held upon the case made was that it was a suit at common law. There was no question of the parties' right to a trial by jury upon the quantum of the assessment.

In Upshur County v. Rich, 135 U. S. 467, at page 476, 10 Sup. Ct. 651, at page 654 (34 L. Ed. 196) the court cites the case of Kohl v. United States as holding that a proceeding for the condemnation of land as a site for a post office is a suit at law, and in Chappell v. United States, 160 U. S. 499, on page 513, 16 Sup. Ct. 397, at page 401 (40 L. Ed. 510) both the cases of Kohl v. United States and of Upshur County v. Rich are cited as deciding the proposition that a proceeding for condemnation "instituted and concluded in a court of the United States was in substance and effect an action at law."

In United States v. Jones, 109 U. S. 513, at page 519, 3 Sup. Ct. 346, at page 350 (27 L. Ed. 1015), the court uses this language:

"The proceeding for the ascertainment of the value of the property and consequent compensation to be made is merely an inquisition to establish a

particular fact as a preliminary to the actual taking; and it may be prosecuted before commissioners, or special boards, or the courts, with or without the intervention of a jury, as the legislative power may designate."

But the question of the right to a jury was neither before nor argued before the court. The only question before the court was whether the United States could use a state tribunal for the purpose of condemnation proceedings. The court itself (109 U. S. on page 518, 3 Sup. Ct. on page 349, 27 L. Ed. 1015) states:

"The only point presented upon which we can pass relates to the jurisdiction of the court below; if that can be sustained, its judgment must be affirmed."

Indeed, it actually appears in the case that a jury was allowed by the statute, and actually the judgment below was based upon the verdict of a jury. There was no contention but that the party was entitled to a trial before a jury.

In Chappell v. United States, 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510, the right to a trial by jury was not contested. It was a proceeding for condemnation filed in the District Court for the District of Maryland under the act of Congress of August 1, 1888, and the question was whether the party was entitled to *two* juries. The trial was regularly had before the District Court itself, and a special jury of 12 impaneled by the court for the purposes of that particular inquisition. The contention of the party was that he was entitled to a hearing before a special jury, and then a trial de novo before another and a regular term jury. The Supreme Court held that the defendant had had the benefit of a trial by an ordinary jury at the bar of the District Court, and was not entitled to a second trial by jury, except at the discretion of the trial court, or upon reversal of its judgment for error in law.

In Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270, the case came up in the District of Columbia under the act of Congress of March 2, 1893, providing for the acquisition of ways for highways in the District of Columbia, and which provided for an assessment on a trial before a court and a special jury of 7 persons. No question was made or argued in the case that the party was entitled to a jury of 12 men. The argument was principally upon the question of the constitutionality of the act, and the court says (167 U. S. on page 592, 17 Sup. Ct. on page 983, 42 L. Ed. 270):

"It was objected to the validity of section 15 that it commits the assessment of benefits upon lands, whether within or without the particular subdivision benefited by the establishment of a new highway to 'the same jury' which estimates the compensation or damages under the previous sections for taking lands within the subdivision for the purpose of the highway. Some confusion has perhaps arisen from designating the tribunal of 7 men which is to estimate the damages and to assess the benefits as 'a jury,' when it is in truth an inquest or commission appointed by the court under authority of the act of Congress, and differing from an ordinary jury in consisting of less than 12 persons and in not being required to act with unanimity. * * * By the Constitution of the United States the estimate of the just compensation for property taken for the public use under the right of eminent domain is not required to be made by a jury, but may be intrusted by Congress to commissioners appointed by a court or by the executive, or to an inquest consisting of more or fewer men than an ordinary jury."

This enunciation, if carried to its apparent logical extent, would appear to mean that Congress could, if it saw fit, devolve upon a single individual appointed by the executive the right and power of depriving an individual of his property, worth say thousands of dollars, at an arbitrary valuation, when it could not impose a fine of a small amount without the verdict of a jury of 12 men. The only question for decision before the court in Bauman v. Ross, as appears from the statement in the opinion of the court itself on this point, was whether section 15 of the act was invalid, because it committed two different assessments to the same jury. There was nothing either asserted or argued in the case that called for a ruling that no jury of any kind was requisite. The whole confusion on the subject appears to go back to the statement in Kohl v. United States that the right of eminent domain always was a right at common law and was enforced without the agency of a jury. That it was a right of sovereignty, and as such recognized and exercised by the law of England, is unquestioned; but it was not a right at common law, understanding by common law the collection of unwritten principles and precedents administered by the judiciary as forming the law governing the relations between crown and subject and subject and subject. The common law did not include statutes, but only the general customs of the realm contained in the body of its unwritten principles and precedents. 1 Bl. Comm. 62–64. It is hardly correct to term a law or a right created by and depending upon statute as forming a part of the common law. The crown itself in England possessed no power to expropriate the property of an individual. In Article XLVI of Magna Charta it is declared that no freeman shall be disseised or divested of his freehold or of his liberties or free customs, but by the judgment of his peers or by the law of the land, and these rights were made clearer and embodied in the petition of right to Charles I and the Bill of Rights enacted in the first year of William and Mary.

True, it left the "attribute of sovereignty," viz., the right to take private property for public use, the "law of the land," although not the common law. It could be done and be done only by act of Parliament (i. e., with the threefold concurrence of King, Lords, and Commons), and when done was done by virtue of a statute. Not of the common law. By the constitution of England, Parliament was supreme. 1 Black. Comm. 160–162. It could do anything. A trial by jury was secured by Magna Charta and the common law, but Parliament could dispense with it. It could and at times did put a man to death, attaint him, and forfeit all his property without any trial whatsoever, but simply by act of Parliament as the law of the land. 4 Black. Comm. 259. It could therefore take private property for public use without compensation; but there had grown up a system of construction in England, so continuous and uniform as to become fundamental law, that Parliament would not take private property for private uses, nor would it take private property for public uses without just compensation. 1 Black. Comm. 138, 139; Loan Association v. Topeka, 20 Wall. 662, 22 L. Ed. 455; Chicago, Burlington R. R. v. Chicago, 166 U. S. 237, 17 Sup. Ct. 581, 41 L. Ed. 979; Traction Co. v. Mining Co., 196 U. S. 251, 252, 25 Sup. Ct. 251, 49 L. Ed. 462.

These two principles were supposed to be imbedded in the United States Constitution—the one expressly in the fifth amendment; the other as implied therein. Loan Association v. Topeka, supra.

As Parliament had the right to take without compensation if it saw fit, and had the right to do away with jury trial also if it saw fit, it was entirely within its power, in statutes providing for the expropriation of private property for public uses, if it directed the compensation it saw fit to pay to be ascertained by assessors other than a jury. A jury was dispensed with in such cases, not because at common law in similar cases a trial by jury could not have been had, but because each statute of Parliament providing for an appropriation of private property to public uses was a law unto itself, made for that special occasion, and being enacted by the supreme power in the land, unhampered by any written constitutional restrictions, it provided in each particular case for the ascertainment of the compensation to be made by such person or persons, commission, or tribunal it saw fit.

A good deal of unconsidered language has been used with regard to the method of ascertaining the compensation in such cases prevailing in England and America prior to the adoption of our Constitutions. In the article on Eminent Domain in volume 7 of the Ency. of Pl. & Pr. p. 546, it is stated that "a well-settled practice existed both in England and in America before the adoption of any of our Constitutions of ascertaining the compensation by means of other agencies than a common-law jury," and this language is supported by many of the decisions of state courts cited in the note.

But it is entirely erroneous to speak of "a practice" which depended in each case upon the terms of the particular statute, and it is wholly overlooked that anterior to our American written Constitutions the conditions in the American colonies were the same as those in England; i. e., the colonial assembly, with the concurrence of the King's representative, was supreme, except where controlled by some express statute or law of the mother country. The local Parliaments, including therein the representative of the crown, had the same powers as the Parliament of England in this regard, and could appropriate private property for public use without any compensation, and could therefore allow such compensation as they chose to allow, to be ascertained in any manner they saw fit.

With the advent of written Constitutions came a different power of action by the legislative body. The federal Constitution contains two applicable provisions. The fifth amendment to the United States Constitution prohibits the taking of private property for public uses without just compensation, and the seventh amendment reserves the right to a jury trial in suits at common law where the value exceeds $20. Under these provisions that "attribute of sovereignty," viz., the right to take private property for public uses, which was unlimited as to its exercise by the supreme lawmaking power, became now limited in express terms.

1. It could be exercised only upon condition that just compensation was paid.

2. If the proceeding to condemn were a suit at common law, the right to a trial by jury was reserved.

As the process of condemnation as practiced since our written Constitutions did not exist at common law, the question is really whether this process as now created was not the equivalent of a suit at common law. The jury at common law was always the tribunal to assess damages. Under the practice in cases of admiralty and equity jurisdiction in England, a man might be judicially divested of his property, but not in the way of assessment of damages in common-law rights of action. Equity and admiralty dealt with questions of existing rights of property, and the relations of litigants to each other; but the assessment of damages for torts committed upon the person or property was at common law the function of a jury. In any case even in equity and admiralty, the adjudication depriving a suitor of his property, or condemning him to pay money to his adversary, was rendered only after a hearing before a proper judicial tribunal, presided over by a duly qualified judge, after testimony taken and argument had with the administration of justice according to settled judicial principles and the right of appeal to a higher court on questions of fact and law—a different case from a hearing before a special commission or a single individual appointed for the occasion by the executive.

The taking of property by condemnation under the power of eminent domain is compulsory. The party is deprived of his property against his will. It is in effect a lawful trespass committed by the sovereign, and lawful only on the condition that the damages inflicted by the trespass are paid to the injured party. The analogy to a suit at common law for trespass is close and complete, and it is for that reason presumably the Supreme Court of the United States, acting on the definition of a suit at common law previously indicated by it, has decided that a proceeding by the United States to condemn lands for public purposes is a suit at common law. If so it be, then it would follow that the defendant, if he claims it, is entitled at some stage in the proceeding to have his damages assessed by a jury. Could it be reasonably argued that, if the government instituted proceedings to condemn a chattel worth $50 for violation of the custom laws, the owner or claimant is entitled to a trial by jury, or if it seeks to condemn a chattel worth $25 for violation of the excise or pure food laws, the owner or claimant is entitled to a trial by jury. Union Ins. Co. v. United States, 6 Wall. 759, 18 L. Ed. 879; Henderson Distilled Spirits, 14 Wall. 53, 20 L. Ed. 815; Garnhart v. United States, 16 Wall. 165, 21 L. Ed. 275; United States v. Winchester, 99 U. S. 372, 25 L. Ed. 479.

Yet if it proceeds to condemn a piece of land for public purposes worth $50,000, the owner or claimant is not entitled to a trial by jury! The only difference in the cases is that in the proceedings to condemn for violation of the law the issue for the jury is the fact of violation, while in the proceeding to condemn for public purposes the issue is the value of the property. But that is the issue in this case. The crime of the owner in the last case is his refusal to accept what the government offers to pay, and his insistence upon a higher value, and as it is the case of a suit at common law, he is entitled to have his damages assessed by a jury.

The judgment of the District Court of the United States for the Western District of Virginia is accordingly reversed, and the cause remanded for a new trial before a jury.

Reversed.