### UNITED STATES v. GRAHAM & IRVINE et al.

(District Court, W. D. Virginia. November 23, 1917.)

No. 601.

1. STATUTES ⊕188—CONSTRUCTION.
    It is the general rule that, unless the context forbids, words used in statutes are to be construed in the sense in which they are popularly used.

2. EMINENT DOMAIN ⊕5—PURPOSE—ACQUISITION—FOREST RESERVE.
    In view of Act Aug. 1, 1888, c. 728, 25 Stat. 357 (Comp. St. 1916, §§ 6909, 6910), declaring that in every case in which the Secretary of the Treasury or any other officer of the government has been authorized to procure real estate for public use he shall be and is authorized to acquire same by condemnation, Act March 1, 1911, c. 186, 36 Stat. 961 (Comp. St. 1916, §§ 5174–5187), providing for national forest reservations and

---
⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

declaring in section 7 (section 5180) that the Secretary of Agriculture is authorized to purchase in the name of the United States such lands as have been approved by the National Forest Reservation Commission at the price or prices fixed by the commission, provided that no deed or other instrument of conveyance shall be accepted or approved by the secretary until the Legislature of the state in which the land lies shall have consented to the acquisition, must be deemed to authorize the Secretary of Agriculture to condemn land for a forest reservation.

3. EMINENT DOMAIN ☜⇒5—ACQUISITION—FOREST RESERVE.·
The provision allowing the Secretary' of Agriculture to purchase only at the price fixed by the National Forest Reservation Commission does not deprive him of the power to acquire lands by condemnation, for the commission may as well fix the price it is willing to pay after report by the commissioners of condemnation as after negotiations with landowners.

4. STATUTES ☜⇒219, 220—CONSTRUCTION.
The construction of a statute by executive officers of the government as well as the construction placed thereon by state Legislature is of weight.

5. EMINENT DOMAIN ☜⇒5—AUTHORITY OF GOVERNMENT—FOREST RESERVATIONS.
Where the state has given its consent to the acquisition of land for forest reservation, the United States has constitutional authority to condemn land desired for such reservation in accordance with Acts March 1, 1911, and Aug. 1, 1888.

6. EMINENT DOMAIN ☜⇒191(5)— PROCEEDINGS — PETITION — INABILITY TO AGREE WITH OWNERS.
Where it was desired to acquire lands in Virginia pursuant to Act March 1, 1911, for a forest reservation, a petition in condemnation proceedings in the federal court, alleging that petitioners cannot agree on the price and terms for the purchase of said lands because some of said persons cannot with reasonable diligence be found in the state of Virginia, was sufficient under Code Va. 1904, § 1105f, subd. 4, declaring that any person or company authorized to condemn lands "which cannot * * * because of inability to agree upon the price or terms, or because the owner cannot with reasonable diligence be found" in the state, shall institute proceedings, etc.

7. EMINENT DOMAIN ☜⇒233—CONDEMNATION—AUTHORITY OF COMMISSIONERS.
As objecting defendants will be entitled to jury trial if dissatisfied with the award of commissioners in condemnation proceedings, such commissioners, in a proceeding by the United States under Act March 1, 1911, to acquire land for a forest reservation, may find the full value of the land and are not restricted to the value agreed upon between the government and some of the claimants, for if deeming the valuation too high the National Forest Reservation Commission may refuse to pay the money into court.

8. CONSTITUTIONAL LAW ☜⇒313—DUE PROCESS OF LAW.
The mere fact that the respective titles of rival claimants to land sought to be condemned ·by the government will not be tested by jury trial, but by reference to a special master, according to the Virginia statute (Code 1904, § 1105f[14]), is not a denial of due process of law.

Condemnation proceeding by the United States against Graham & Irvine and others, in which J. W. Dudley and another, citizens of West Virginia, appeared specially, filing objections to the jurisdiction. Objections overruled.

E. L. McNeilly, Sp. Asst. Atty. Gen., and Joseph H. Chitwood, Asst. U. S. Atty., of Roanoke, Va., for the United States.

Sipe & Harris, of Harrisonburg, Va., and Edwin B. Jones, of Monterey, Va., for Dudley and Grogg.

☜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McDOWELL, District Judge.   In opposition to a proceeding by the government to condemn land in this district, J. W. Dudley and R. C. Grogg, citizens of West Virginia, have appeared specially for the purpose and have filed written grounds of objection to the jurisdiction of the court.   The nature of these objections is sufficiently shown by what follows, except to explain that in the petition it appears that there are rival claimants to a part of the land, and that some of the claimants, other than Dudley and Grogg, had agreed with the government on the value of the land.

This is a condemnation proceeding instituted by the government to acquire title to a large tract of land in this district.   Among the numerous defendants are J. W. Dudley and R. C. Grogg, who have filed sundry objections to the jurisdiction of the court.

[1, 2] 1.  The first objection is based on the theory that the "Weeks Act" (of March 1, 1911, 36 Stats. 961, c. 186, 5 U. S. Comp. Stats. Ann. §§ 5174–5187) does not authorize condemnation.   This contention finds its chief support in the use of the word "purchase" in the statute.   If we were necessarily limited to the language of this statute, there might be room for some doubt.   It is the general rule that, unless the context forbids, words used in statutes are to be construed in the sense in which they are popularly used.   However, it is to be noted that the words "acquirement," "acquisition," and "acquired" are quite frequently used in the statute, and that in the title the word "acquisition" is used and not the word "purchase."   Again, the act deals with the highly technical subject of the acquisition of title to land.   It would therefore be expected that the word "purchase" therein was used in its legal sense, rather than in the narrow, popular sense.   In section 7 of the act it is provided:

"That no deed or other instrument of conveyance shall be accepted  *   *   * until the Legislature of the state in which the land lies shall have consented to the acquisition of such land by the United States.  *   *   *  *"

If only voluntary sales of lands were intended, it is difficult to see why instruments of conveyance other than deeds were mentioned.   In enacting such legislation it must have been contemplated that many tracts of lands highly desirable for the purpose intended might be owned by infants, or by insane persons, or by persons who would try to exact unreasonable prices, and that in many cases conflicting claims of title would exist.   To authorize acquirement only by voluntary sale was so certain to greatly interfere with the chief and ultimate purpose in view that the context would seem to afford strong reason for declining to read the word "purchase" otherwise than in its broad legal signification.   Moreover, in enacting the statute it seems rather clear that Congress had in mind the purpose of acquiring certain kinds of land, rather than the method of acquiring.

Again, by the Act of August 1, 1888, c. 728, 25 Stats. 357, U. S. Comp. Stats. Ann. §§ 6909, 6910, 6 Fed. Stats. Ann. pp. 700–703, Congress had provided:

"That in every case in which the Secretary of the Treasury or any other officer of the government has been, or hereafter shall be, authorized to procure real estate  *   *   *  for  *   *   *  public uses he shall be, and hereby

is, authorized to acquire the same for the United States by condemnation. * * * "

It must be assumed that in enacting the act of 1911 Congress had in mind the act of 1888. Sutherland, Stat. Constr. § 333; 36 Cyc. 1146. In view of the act of 1888 it was quite unnecessary to use in the act of 1911 words expressly stating an intent to permit acquisition of lands by condemnation. And indeed, because of the provisions of the act of 1888, it seems to me impossible to hold that the act of 1911 shows an implied intent to repeal the act of 1888 as to lands to be acquired under the act of 1911. If such intent had existed, no such words as "acquirement" and "acquisition" would have been used in the act of 1911. On the other hand, the language would have been "purchase by voluntary sale" or words of similar import.

[3] It is argued that the language of section 7 of the act of 1911 negatives acquisition of land by condemnation, because the Secretary of Agriculture is only authorized to purchase at a price to be fixed by the National Forest Reservation Commission. I am unable to see why the commission may not as well fix the price it is willing to pay after a report by commissioners of condemnation, as after negotiations in pais with landowners.

It is further urged that there are no provisions in the act of 1911 specifically relating to acquisition by condemnation. This was to be expected, because the act of 1888 provides in effect a complete procedure for condemnation.

In U. S. v. Beaty (D. C.) 198 Fed. 284, 286, the trial court passed upon this same question in construing the Act of March 3, 1911, c. 209, 36 Stats. 1037, 1049, and its ruling that the word "purchase" there used included condemnation was affirmed. See Beatty v. U. S., 203 Fed. 620, 621, 122 C. C. A. 16. See, also, U. S. v. Whipple, 191 Fed. 945, 946, 947, 112 C. C. A. 357.

[4] If there remains grave doubt as to the proper construction of the act of 1911, the construction put on it, in a great number of instances, by the executive officers of the government charged with its execution, including the Attorney General, showing the statute to have been construed as authorizing condemnation proceedings, is of considerable weight. Also of some weight is the language of the Virginia Act of March 22, 1916, Acts 1916, p. 793, giving consent to "the acquisition by the United States, by direct purchase from the owner or owners, by condemnation, or otherwise, of any land in the state for the purpose of forest conservation and preservation of natural resources."

On the whole, construing as we should the act of 1911 in connection with the act of 1888, it seems to me that the former must be read as contemplating and intending the acquisition of forested watershed lands by condemnation.

[5] 2. The contention of want of constitutional authority in the federal government to acquire land by condemnation under the acts of 1911 and 1888 seems to me to raise a question that has been too long and too thoroughly settled to justify discussion.

That the consent of the state of Virginia to the proposed acquisition

has been given is shown by Acts 1901–02, p. 565; Acts 1912, p. 563; and Acts 1916, p. 793.

[6] 3. I am not absolutely satisfied that the Legislature of Virginia intended that an unsuccessful effort to agree upon the price to be paid should be a jurisdictional prerequisite to a condemnation proceeding, and still less satisfied that the right of the federal government to maintain a proceeding to condemn land in its own courts was intended by the federal act of 1888 to be dependent on such requirements of the state laws. However, waiving both these questions, the petition alleges that Dudley and Grogg are residents of Parkersburg, W. Va. In their "objections" these defendants allege that they are citizens and residents of West Virginia. In the petition it is alleged:

"Petitioners cannot agree on the price and terms for the purchase of said lands, by reason of some one or more of the following facts, * * * respecting some of the persons * * * claiming * * * such lands: Because * * * some of said persons cannot with reasonable diligence be found in the state of Virginia."

The petition sets out the names of all of the defendants with whom an agreement as to price had been made. It seems therefore to be fairly implied, either that no agreement could be reached with Dudley and Grogg, or that no agreement has been attempted with them as they could not with reasonable diligence be found in the state of Virginia. Section 1105f, subd. 4, reads, in part:

"Any company * * * authorized * * * to condemn lands * * * which cannot * * * because of * * * inability to agree upon price or terms, or because the owner cannot, with reasonable diligence, be found in this state, * * * shall," etc.

[7] 4. I am wholly unable to see force in the contention that the commissioners appointed in this proceeding to ascertain the value of the land, etc., are necessarily restricted to the value agreed upon between the government and some of the claimants. I can see that the Forest Reservation Commission may refuse to pay the money into court if the condemnation commissioners fix too high a valuation; but nothing on the face of the petition and nothing in the law forbids the condemnation commissioners to report the full value of the land and the full damage done by taking it. And, moreover, by force of Beatty v. U. S., 203 Fed. 620, 122 C. C. A. 16, these objecting defendants will be allowed a common-law jury trial of the question of the value of the land, etc., if they are not satisfied with the award of the commissioners.

[8] 5. It is contended that the proceeding here is a denial of due process of law, because, following section 1105f(14), Code of Va. 1904, the claims of the rival claimants to the land will be referred to a special master for a report as to the proper distribution of the fund to be paid into court by the government, and no jury trial will be had. If Dudley and Grogg were the only claimants of the land in suit, the right of the government to maintain this proceeding is, to my mind, too clear to justify discussion. The fact that some other claimants have agreed with the government agents as to the value of the land cannot possibly, as I see it, destroy the right of the government to maintain this proceeding. The federal Constitution merely

preserves the right of trial by jury. My own opinion as to a right of trial by common-law jury in a condemnation case in a federal court of this state is expressed in U. S. v. Beaty (D. C.) 198 Fed. 284. By force, and only by force, of the opinion of the Circuit Court of Appeals of this circuit in Beaty v. U. S., supra, do I concede a right to a jury trial of the question of damages. But that opinion does not require more, and I can and must follow the weighty authorities cited in (D. C.) 198 Fed. at page 288. In addition to which, see Postal Co. v. Southern R. Co. (Simonton, C. C.) 122 Fed. 156; Great Falls Co. v. Garland (Morris, C. C.) 25 Fed. 524; 15 Cyc. 872, 873, and notes; Nichol, Em. Dom. §§ 301, 302.

I must hold that the objections to the jurisdiction of the court are without merit.