## FILBIN CORPORATION et al. v. UNITED STATES.

(District Court, E. D. South Carolina. May 28, 1920.)

No. 788.

1. **Jury ☞19 (11)—Owner entitled to jury trial on question of compensation.**
   Under the provision of Lever Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), authorizing the President to requisition storage facilities for supplies for the army and navy, and to ascertain and pay just compensation therefor, and providing that, if such compensation is not satisfactory to the owner, he shall be paid 75 per cent. of the amount and may sue the United States so as to make up just compensation, such a suit is a part of what is in effect a condemnation proceeding, instituted by the requisition and taking possession of the property, and upon the question of just compensation the owner is entitled of right to trial by jury.

2. **Eminent domain ☞1—Right of "eminent domain" defined.**
   The right of "eminent domain" means the right of the governing body, under the exigencies of the public weal, to take private property for the public use and for the public benefit.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Eminent Domain.]

3. **Courts ☞41—Judge and jury as constituting "court."**
   In common-law actions, the "court" consists, for the determination of a controversy, of a judge and a jury.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Court.]

At Law. Action by the Filbin Corporation and the Cooper River Corporation against the United States. On motion to place cause on jury issue docket. Granted.

Buist & Buist and Miller, Huger, Wilbur & Miller, all of Charleston, S. C., for petitioners.

Francis H. Weston, U. S. Dist. Atty., of Columbia, S. C., and J. Waties Waring, Asst. U. S. Dist. Atty., of Charleston, S. C.

SMITH, District Judge. This matter has come on to be heard upon a motion that the cause for the ascertainment of the amount to

be paid be placed on the jury issue docket as an action at law involving issues of fact for a jury, or, if the same is not put as a matter of procedure and right upon that docket, that an issue of fact be framed by the court for submission to a jury as to the amount of compensation which should be paid.

This proceeding is one that arises under section 10 of the Act of Congress approved August 10, 1917, entitled:

"An act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel." 40 Stat. p. 276 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii).

This was a statute passed whilst this country was at war with Germany, and passed under the exigencies of the requirements of the situation. Section 10 provides that—

"The President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the army or the maintenance of the navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation for such necessaries or storage space, and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies."

Under the authority conferred by this statute, and presumably therefore to supply storage facilities for the supplies requisitioned under the act, the President of the United States, about April 5, 1918, requisitioned the pieces or parcels or tracts of land mentioned and described in the petition herein; and thereupon the United States entered upon the exclusive use and occupation of the premises so requisitioned, and erected thereon extensive storage facilities for the storage of the supplies for the army; and the premises or lands so requisitioned remained in the exclusive use and enjoyment of the United States.

In accordance with the terms of the act, the President determined the compensation to be paid to the owners of the property at the sum of $42,360; but the compensation so determined by the President was not satisfactory to the owners, who thereupon instituted these proceedings to recover such further sum as, added to the 75 per centum of the amount determined by the President, will make up such amount as will constitute a just compensation for the lands so requisitioned and taken. To this petition an answer has been filed on behalf of the United States, and the matter is now at issue and ready for trial.

[1, 2] This motion to refer the issue, as to the amount that will constitute a just compensation, to a jury, is opposed by counsel on behalf of the United States, on the ground that this proceeding, being instituted simply by virtue of the authority to sue given under the terms of the act, must be strictly followed, and that under the terms

of the act the authority given to the District Courts of the United States to hear and determine the controversy over what constitutes just compensation, is to be heard by the court in the sense of being heard by the judge of the court alone, without a jury. The power to requisition or take private property for public purposes, whether this public purpose be for the exigencies of war or the necessities of peace, in all circumstances rests upon the power to exercise that attribute of sovereignty now commonly called "the right of eminent domain." That means the right of the governing body, under the exigencies of the public weal, to take private property for the public use and for the public benefit.

Under the Fifth Amendment to the Constitution of the United States, the exercise of this power of sovereignty to take private property for public use is conditioned on the payment of just compensation; and any attempt or proceeding on the part of the government to take private property for public purposes without payment of just compensation would be wholly tortious and unconstitutional. Beatty v. U. S., 203 Fed. 625, 122 C. C. A. 16. In case private property should be attempted to be taken by the government of the United States, without just compensation, the remedy of the injured property holder is limited in its extent. Without the permission of the government, the government cannot be sued for any damages or amount due for the tortious act of its officers or employés; but should it be attempted to seize and withhold the use of private property from the party entitled thereto, without any provision for just compensation, the court would enforce the provisions of the Fifth Amendment, either by enjoining individuals who, acting under authority of an unlawful statute, might attempt to detain and occupy the property, or would allow suits in trespass against individuals so unlawfully acting, for the damages inflicted by their unlawful acts. That would be the remedy.

The course of legislation, however, under the Constitution of the United States, and under the Constitutions of the several states composing the United States, has been to obviate this conclusion or resort being forced upon private owners of property, by providing for different ways or methods of ascertaining how the amount of just compensation to be paid shall be determined. In all cases whatsoever, however, the original act of the requisition (if it be so termed), or the condemnation (as it may more properly be termed) of private property for public purposes, rests ultimately upon the power of the sovereign to take private property for public purposes, under the right and power of what we have called "eminent domain," and as a condition of the exercise of which in this country, under the Constitution of the United States, just compensation must be paid.

There may be different ways of carrying out this method of taking or of obtaining possession for public purposes of the res or article to be condemned. It may be appointed to be taken by different tribunals or different commissions or different persons, and, according to the exigencies of the case, under different procedures, or in some states it is allowed to be taken by direct legislative declaration, determining

the necessity of the exercise of the power, leaving the question of compensation only to be thereafter determined.

The power of determining whether the public exigency calls for the exercise is, as a rule, vested in the legislative department of the government, and in the case of the United States it has been so expressly decided; for determining the question whether or not the property is needed for public purposes is a matter that may be decided finally and entirely by the legislative authority. Acting upon such a decision, the taking either may be by a direct legislative provision, or the Legislature may authorize and empower different bodies or different individuals to ascertain and determine whether property should be taken and what property should be taken. All this is within the control of the legislative branch of the government.

The question of compensation, however, is not. The Constitution has expressed that the exercise of this power by the legislative department can be only upon condition of the payment of just compensation. There are two acts involved in the exercise of the power: One is the taking possession of the property; and the other is the compensation to be paid for the same. No matter what may be the guise or form or language in which this taking may be phrased or determined, it all ultimately comes from the same power, and is in effect a condemnation for the taking of private property for public use, whether it be termed a condemnation or a requisition or any other name. The determination of the amount of compensation to be paid, being a matter under the Constitution reserved as a controversy existing between the public and the individual, in which in the first instance the public is the actor by the mere taking of the property, has been decided by the Supreme Court of the United States to be akin in all respects to a suit at common law. Kohl v. U. S., 91 U. S. 367, 23 L. Ed. 449. A suit at common law in which the action of the legislative department is conclusive upon the question of the necessity for the taking, but the question of compensation is still one to be submitted to a jury. If it be a suit at common law under the Constitution of the United States, the right of the individual party to a trial by jury is expressly reserved.

In the opinion of this court, the statute in question, providing for the exigency to meet which it was passed, provided for a condemnation, the necessity of which was to be determined summarily by the President, and his determination had all the force and effect of a determination by statute or resolution of Congress. His determination that it was necessary to take it was conclusive. His determination of the compensation to be made could not, by any valid statute passed by Congress, be made conclusive. The provision that he should determine, in the first instance, so as to pay 75 per centum of the amount determined by him, was a provision in favor of the owner of the property, so as not to keep him out of all compensation, pending the litigation to which he is entitled by the Constitution to determine what was just compensation. No statute could give to the President alone the power finally to determine what should be just compensation to be paid for the exercise of the power of condemna-

tion. Although the word "requisition" is used, in the opinion of the court the proceeding authorized by section 10 of the statute is in effect a condemnation, save that under the exigencies to be met by the statute, instead of having the amount of compensation determined before the use and benefit of the property to be condemned could be enjoyed by the public for the public weal, that possession and use was given at once, leaving the question of compensation to be thereafter determined.

The taking and the method to ascertain the compensation are a part of the process of condemnation, being a particular method of condemnation provided by the Legislature under the exigencies of the case. The proceeding is in reality begun by the requisition. The application to have the compensation fixed is a part of that proceeding, necessarily subsequent, as depending upon the fact whether or not the owner of the property might agree to the sum fixed by the President as just compensation. If he so accepted it, there was no necessity for any further proceeding. If he were dissatisfied with it, then the expression of his dissatisfaction, and the means taken to have it determined, were all a part of the condemnation as a whole.

This proceeding, under section 10, is not an original suit against the United States, to institute which needed express legislative permission. It is a part of the proceeding for condemnation originally instituted by the United States itself, and in which the United States is the actor; this being only the defensive answer of the property holder to assert his right to just compensation. No other interpretation consistent with the Constitution appears a reasonable one.

The privilege given in the act for a party to sue the United States is not a privilege given to sue the United States in matters in which that privilege never theretofore existed. It is given as a part of the process of condemnation, without which title to the property could not be acquired by the governing body for public purposes. It does not come within the purview and scope of the general class of claims against the United States, resulting under contracts, or for damages for the unauthorized acts of its officers, who may be personally responsible, but for which the United States could not be sued without its consent. If in this case, as a matter of right to ascertain the compensation, this proceeding could not be instituted by the owner of the property, then he would have the right by injunction to exclude any person, whether authorized by the President or not, unlawfully in possession, or to sue any individuals in possession for damages for trespass.

As a part of the proceeding for condemnation, the amount of the compensation can be ascertained, if demanded by the party thereto entitled by the verdict of the jury; and in the opinion of the court, as a matter of legal right, the owner of the property has a right to have the question of what is just compensation for his property which has been condemned for public purposes, ascertained by a jury. Beatty v. U. S., 203 Fed. 625, 122 C. C. A. 16. Further than that, however, if it were a matter in which the court possessed any discretion, it would be eminently a proper question to be submitted to a

jury. If a proceeding to obtain compensation under a proceeding to condemn did not arise from the constitutional right given every citizen whose property was taken, but emanated solely from the permission of the government to be sued, and the submission of the question to a jury was expressly denied, necessarily the court would be without the power to refer it to a jury.

[3] The statute in this case does not in express terms say that the issues must not be submitted to a jury, either as a matter of right or for the assistance of the conscience of the court in coming to a conclusion. It says that jurisdiction "is hereby conferred on the United States District Courts to hear and determine all such controversies." In common-law actions, the court consists, for the determination of a controversy, of a judge and a jury. In common parlance, we sometimes speak of "the court" in such actions as meaning the judge, in contradistinction to the jury; but that is not the correct phrase. In the trial of a common-law action, the verdict of a jury as part of the court must be placed in the form of execution by the judgment of the court; but both of them are parts of the court as a whole in coming to the result.

The very circumstance that in subdivision 20 of section 24 of the Judicial Code of the United States (Comp. St. § 991 [20]), relating to the jurisdiction of the District Courts, jurisdiction is given to them of claims not exceeding $10,000, in respect to which claims the party would be entitled to redress against the United States, if the United States were suable, it is provided that all suits brought thereunder shall be tried by the court without a jury, is very indicative. It shows that without such particular prohibition the causes would be triable by a jury, and the omission of that prohibition in the statute of 1917 would appear to leave it open to that method of trial.

The very function of the jury at common law was to serve as a shield and bulwark between the government (which was that of the crown) and the subject. The great reliance placed upon the jury at common law, and the eulogies passed upon it as part of the protective tribunal of a free people, was that originally a jury stood as the shield of the subject from the crown. In fact, in the earlier text-books on common law, that is placed as one of the reasons for the original existence of the juror—for no free man could be punished at the instance of the king, save upon a verdict of a tribunal consisting of 12 of his peers. That period has long since passed. The jury has for centuries been considered in common-law cases as part of the tribunal to decide controversies between individuals, as well as controversies between the government and the subject; but none the less that reason must be looked at in determining what is the right of the subject as against the rights asserted by the government, and evidencing also what questions would originally have been submitted to a jury for determination, as part of his protection against tortious or oppressive acts of the king or government, and therefore has great weight with a court in cases which might be decided by the judge alone, but where a jury is permissible in concluding what questions should be by him submitted to a jury for the assistance of his conscience.

The determination of what was the fair value of a piece of land taken for public purposes would seem to present a very proper occasion for the chancellor to have the benefit of the opinion of a disinterested jury. The jurors of this court are drawn from all parts of the district, and not simply from the locality in which the property is situated; in fact, a very small percentage of them may come (if any actually at the trial do come) from that locality. It would not appear, therefore, that any cause of objection to a jury on the ground of interest or local favoritism would exist against the jurors to whom the issue should be presented.

For all these reasons, it is ordered and adjudged that it shall be submitted to a jury at the next term of this court, or at any term thereafter, as soon as it can conveniently be tried, to determine in this case the following issue, viz.: What, on April 5, 1918, was the fair and reasonable value which would constitute a just compensation to be paid for the taking for public purposes of the lands mentioned and described in the petition herein?