## UNITED STATES v. CHICHESTER et al.

(District Court, W. D. Virginia.  June 24, 1922.)

Courts ⬲334—Condemnation suits by United States to conform to general state procedure.

Under Act Aug. 1, 1888, § 2 (Comp. St. § 6910), providing that condemnation proceedings by the United States shall conform, as near as may be, to the procedure in the state courts "in like causes," the procedure to be followed is that established by state statute in condemnation proceedings generally, and a federal court is not authorized to adopt a procedure specially provided by a state statute for proceedings by the United States, which is less favorable to the property owner, over his timely objection.

Condemnation proceeding by the United States against one Chichester and others.  On motion by defendants to dismiss.  Granted, subject to leave to the United States to adopt different procedure.

R. O. Crockett, Sp. Asst. Atty. Gen., for the United States.
J. M. Perry, of Staunton, Va., for defendants.

McDOWELL, District Judge.  This is a proceeding to condemn land in this district for the federal forest reservation, under the Weeks Act (36 Stat. 961, c. 186 [Comp. St. §§ 5174–5187]).  Mrs. Chichester, of New York, and M. R. Beltzhoover, executor, of Mississippi, filed in due time a joint motion objecting to the procedure and praying that this proceeding be dismissed.

The procedure thus far followed has been that prescribed by a Virginia statute of March 16, 1918 (Acts 1918, p. 509), to be referred to as the McNeilly statute.  This statute undertakes to provide a special procedure for federal condemnation suits in the Virginia state courts, and differs essentially from the Virginia statutory procedure prescribed for all other condemnation suits, found in chapter 176, Code 1919. Under the McNeilly statute (subject to an exception—section 11, p. 522—which will very rarely arise) any controversy as to the value of the land is immediately and finally submitted to a jury; and it is not necessary that even a single member of the jury which tries the case be from the county in which the land lies.  In fact, it may easily happen that no member of the jury has the knowledge of local conditions and values that freeholders of the county where the land lies would be very likely to have.  Under the ordinary procedure set out in chapter 176 of the Code, the first effort at ascertaining the value of the land is a meeting on the land of a commission of five freeholders of the county in which the land, or the greater part, lies.  All parties are heard by the court in appointing these commissioners.  The commissioners not only hear the testimony of witnesses, but they are required to go on the land and use their own knowledge and judgment in arriving at its value.  If this court were at liberty to follow closely the procedure set out in chapter 176, either side could object to the valuation fixed by the commissioners, and if, on hearing evidence, the court is satisfied that the valuation is too high or too low, another commission would be appointed, and so on until a proper valuation be returned.  But by

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

force of the ruling of the Circuit Court of Appeals of this circuit, in Beatty v. U. S., 203 Fed. 620, 122 C. C. A. 16, if the landowner so desires, he can object to the valuation fixed by the first commission and have a common-law jury fix the value of the land.

By the Act of Congress of August 1, 1888 (25 Stat. 357, c. 728 [Comp. St. §§ 6909, 6910]), "An act to authorize condemnation of land for sites of public buildings, and for other purposes," the procedure to be followed in federal condemnation suits is thus set out:

Section 2 (Comp. St. § 6910). "The practice, pleadings, forms and modes of proceeding in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the state within which such Circuit or District Courts are held, any rule of the court to the contrary notwithstanding."

There has been, so far as I know, no later Congressional statute relating to the procedure in condemnation suits of the present character. The question presented is as to the right of the government to follow the procedure of the McNeilly statute, instead of that set out in chapter 176 of the Virginia Code, over the timely objection of these defendants.

It is first argued that the Virginia act of 1918 is unconstitutional. Section 63 of the Virginia Constitution reads in part:

"The General Assembly shall not enact any local, special, or private law in the following cases: * * * Regulating the practice in * * * any judicial proceedings. * * *"

It is conceded that the McNeilly statute is neither a local nor a private law; but it is certainly not clear that it is not a special law. If the statute had in terms applied, instead of to condemnation suits brought only by the federal government, to condemnation suits brought only by the Norfolk & Western Railway Company, for instance, the case would have been very plain. It is true that, in theory, the federal government would be much less apt to abuse a special privilege given by act of Legislature than would a private corporation. But still the federal government acts by individual agents, many of whom seek advancement by making records for efficiency. Hence very great harm might result to sundry citizens of Virginia by giving the federal government special privileges by statute, and the state constitutional prohibition could have been intended to forbid the enactment of such statutes. The Virginia state highway commission, the boards of supervisors of every county in Virginia, the council of every city and town in the state, the numerous state institutions, and all the corporations which have the right of eminent domain in this state, *must* proceed in accordance with chapter 176 of the Code. None of them can avoid having the value of the property fixed by a commission composed of local freeholders. The United States, by force of the McNeilly statute, can alone have the value fixed by a jury.

It seems rather difficult to avoid the belief that a statute having such effect is a "special statute regulating the practice in judicial proceedings." And still the question is not so absolutely free from doubt that I feel authorized to hold the McNeilly statute unconstitutional. Whether or not the constitutional convention, in enacting section 63, intended its prohibition to apply to a special statute enacted for the benefit of

the federal government, does not appear. The intention could have been either way. No clear and convincing reason for taking either position occurs to me. I must therefore assume the constitutionality of the statute.

Enough has been said of the differences between a procedure modeled on that laid down in chapter 176, as varied by Beatty v. U. S., supra, and the procedure set out in the McNeilly statute, to show that there is a substantial advantage to the landowner in the general procedure. Such being the fact, and as these defendants have in limine objected to the procedure, it remains only to inquire which of these two procedures was intended by Congress to be followed. It may be conceded at the outset that the federal statute of 1888, supra, is directory, and merely modal. But this court has no right to disregard even a modal federal statute over the objection of a party litigant, who may be substantially prejudiced by a refusal to follow such statute, especially if the objection be made at the first opportunity and be not waived.

The second section of the federal Act of August 1, 1888, is identical with the Conformity Act (section 914, R. S. [Comp. St. § 1537]) of 1872, except that the words "in causes arising under the provisions of this act" are substituted for the words "in civil causes, other than equity and admiralty causes." And the intent that the procedure in condemnation suits in which the federal government is plaintiff shall conform as near as may be to the procedure existing at the time in like causes in the state courts is too plainly expressed to be avoided. In 1888 the members of Congress certainly knew that in every state and territory of the Union there existed an established general procedure for condemnations of land, and it was, of course, the established general procedure of the state (or territory) in which the land to be condemned by the federal government lay that was to be conformed to. The "causes arising" under the act of 1888 are condemnation suits prosecuted by the United States; the "like causes" are condemnation suits prosecuted by other plaintiffs.

I do not know that the federal government ever has in a single instance instituted a condemnation case, under the McNeilly statute, in a Virginia state court. But, if so, no such case could be one of the "like causes" referred to in the act of 1888. Such causes would "arise under" the act of 1888, no matter in what court instituted, and hence could not be merely alike to such causes. As the McNeilly statute does not, by its express terms, apply to condemnation suits instituted in the Virginia state courts by the corporations, the political subdivisions of the state, and the state institutions which have the right of eminent domain, and as such condemnation suits are the "like causes" referred to in the act of 1888, it seems to necessarily follow that the procedure directed by the McNeilly statute is not the procedure which Congress has directed should be followed. On the other hand, chapter 176 of the Code sets out the procedure which is followed in "like causes" to the cause at bar, and hence that procedure is the one which was intended by the act of 1888 to be followed.

Even if we assume that the members of Congress in 1888 anticipated the possibility that some of the states might thereafter adopt statutes which provide a special procedure for condemnations by the federal

government, still the language of the act of 1888 negatives an intent that the procedure of such possibly anticipated state statutes should be followed; and it would have been unwise and very surprising if Congress had intended that any and every state could by act of Legislature provide a special procedure to be followed only in cases in which the federal government is the plaintiff. A federal statute displaying such intent would have closely resembled a surrender of one of the sovereign powers of the federal government, because giving such power to the state Legislatures might be so used as to greatly embarrass or even destroy the federal government's power of eminent domain. On the other hand, safety for the government lay either in a federal statutory procedure or in conformity of procedure to that of like causes in the state courts.

It may be argued that, because a trial by jury is, at least theoretically, a fair way of arriving at the value of land, and as in Beatty v. U. S., supra, 203 Fed. 620, 122 C. C. A. 16, it was held that the landowner is entitled to a jury trial, if he wants it, after an unsatisfactory report from a commission has been filed, there is no merit in an objection to the procedure set out in the McNeilly statute. A commission, selected by the court (aided by counsel for both parties) with a conscious effort to secure fair-minded and intelligent men, composed of freeholders of the county, who act, not only in the light of the evidence of witnesses, but also in the light of personal examination of the land, would in theory be at least as likely to give the landowner a fair award as would a jury acting only on evidence and without actual inspection of the land. In an appraisement by a jury in court, the number of the witnesses. introduced by the respective parties would often be of telling force. When the federal government becomes a party litigant, it need not be and rarely is restrained by expense in summoning all the witnesses desired. But private landowners usually are greatly restricted in the number of witnesses introduced by the cost. When the value of land is to be ascertained by commissioners, who make a personal examination of the land, the mere matter of. the number of witnesses testifying for the respective parties becomes usually of rather slight importance. The chance to have first an award by a commission, and then, if the landowner desires it, a jury trial, rather than only a jury trial, is clearly of substantial value to the landowner. Two chances are certainly better than one.

It is also to be observed that the federal statute of 1888 obviously contemplates and directs the procedure to be followed in condemnation suits instituted by the federal government in the *federal courts*. The McNeilly statute contemplates and directs the procedure to be followed in condemnation suits instituted by the federal government in the Virginia *state courts*. Which procedure should be followed when and if the government institutes a condemnation suit in a Virginia state court may be a very interesting question; but it is not presented here, and in no event can the Virginia Legislature control the procedure in this case in this court, except as it enacts procedural statutes applicable to causes which are "like to" those arising under the federal statute of 1888.

I find nothing in Chappell v. U. S., 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510, which seems to throw light on the question under discus-

sion. I am at present unable to learn with certainty the Maryland general statutory procedure for condemnations in force in 1874. But it is at least doubtful if the Maryland act of 1874 (referred to in the Chappell Case, 160 U. S. 509, 16 Sup. Ct. 400, 40 L. Ed. 510) was intended to provide a special procedure for condemnation cases instituted by the federal government. The purpose of the act of 1874 seems to have been to authorize the federal government to prosecute condemnation suits in the state courts, rather than to provide a peculiar procedure for such suits.

It is seemingly urged that the fact that the government has condemned some other tracts of land in this state in accordance with the McNeilly statute affords a reason for overruling the objection now under discussion. If the McNeilly procedure is not that intended by Congress to be followed, and if following it deprives the landowner of a substantial right or privilege, the sooner this erroneous procedure be abandoned the better. The failure of other landowners in other suits to object to the procedure cannot prejudice the right of the objecting defendants in the case at bar. And in this connection it must be remembered that adherence to the prescribed procedure in condemnation cases is, to say the least, of more importance than in ordinary litigation. In 20 Corpus Juris, 882–884, it is said:

"But while substantial compliance has been held sufficient by some courts, nevertheless, since condemnation statutes are in derogation of general right and common-law modes of procedure, and must therefore be strictly construed, it is held by the great majority of cases that they must be strictly complied with, and the statutory authority be strictly pursued, and every condition or other prerequisite to the exercise of jurisdiction be observed, especially every requisite of the statute having the semblance of benefit to the landowner, and that portion of it in which the public has a general interest, and as strict a compliance is required of those claiming damages as by the public making the condemnation."

If the foregoing reasoning be sound, it might be advisable for the government to dismiss this proceeding, rather than to ingraft on it the procedure indicated in chapter 176. However, the defendants have had substantially the notification required by the general Virginia procedure, and it would seem, therefore, improper to order the dismissal of the present proceeding. All, it seems to me, that the defendants have the right to require, is that the procedure henceforth be conformed as near as may be to the procedure intended by Congress. I shall therefore so draft the order as to give the government the option of dismissing without prejudice, or of giving notice of a motion for the appointment of commissioners in accordance with section 4365 of the Code.