## UNITED STATES v. BEATY et al.

(District Court, W. D. Virginia.    August 9, 1912.)

### Nos. 2,074–2,083.

1. EMINENT DOMAIN (§ 18*)—EXERCISE OF POWER BY UNITED STATES—ACT AUTHORIZING "PURCHASE" OF LAND.

Under the provisions of Army Appropriation Act March 3, 1911, c. 209, 36 Stat. 1037, 1049, making an appropriation "for the purchase of land accessible to the horse-raising section of the state of Virginia for the assembling, grazing and training of horses purchased for the mounted service," such land may be acquired by condemnation, as authorized by Act Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), "in every case in which * * * any * * * officer of the government has been or hereafter shall be authorized to procure real estate for the erection of a public building or for other public uses"; the word "purchase" being used in the appropriation act in a broad sense (citing 7 Words and Phrases, 5853).

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 55, 87, 88; Dec. Dig. § 18.*

Nature and extent of power of United States to condemn property for public use, see note to 70 C. C. A. 653.]

2. EMINENT DOMAIN (§ 209*)—CONDEMNATION PROCEEDINGS BY UNITED STATES—RIGHT TO TRIAL BY JURY.

The provision of Rev. St. § 566 (U. S. Comp. St. 1901, p. 461), that the trial of issues of fact in the district courts in civil actions at law shall be by jury, does not apply to proceedings for condemnation of land for public use, brought under Act Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516); and where by the practice of the state, to which such proceedings are required by section 2 of the act to conform as near as may be, the compensation to be awarded to the landowners is determined by commissioners, whose award is reported to the court for confirmation, such practice may properly be followed by the federal court.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 548; Dec. Dig. § 209.*]

3. WITNESSES (§ 74*)—COMPETENCY—CONDEMNATION PROCEEDINGS.

In condemnation proceedings under a procedure by which the compensation of the landowners is fixed by commissioners, whose award is reported to the court for confirmation, on the hearing of exceptions to their report, the commissioners are competent witnesses.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 188; Dec. Dig. § 74.*]

4. EVIDENCE (§ 142*)—CONDEMNATION PROCEEDINGS—EVIDENCE OF VALUE.

In proceedings by the United States to condemn land, testimony as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

to the price paid by the government for land purchased from other owners, forming part of the tract sought to be acquired, is not competent on the question of the compensation to be awarded a defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. § 142.*]

5. EMINENT DOMAIN (§ 238*)—COMPENSATION—WEIGHT TO BE GIVEN AWARD BY COMMISSIONERS.

The award of commissioners appointed to fix the compensation to which a landowner is entitled in condemnation proceedings, where the fairness of the commissioners is not impeached, should not be changed by the court, except on clear evidence of error or mistake.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 614, 619, 658, 659, 660, 666, 668, 669, 671, 673, 674, 687; Dec. Dig. § 238.*]

Condemnation proceedings by the United States against Paul Beaty and others, against William Brown and others, against Alma Jackson and others, against S. E. Macatee and others, against Lucretia Thompson and others, against Carrie P. Kuser and others, against Lucy E. Barber and others, against Ella S. Kenny and others, against Newton Garrett and others, and against Martha Pomeroy and others. On exceptions to awards of commissioners. Overruled, and awards confirmed.

Barnes Gillespie, U. S. Atty., of Tazewell, Va., and Downing & Weaver, of Front Royal, Va., for the United States.

O'Flaherty & Fulton, of Richmond, Va., and E. H. Jackson and S. Gardner Waller, both of Front Royal, Va., for defendants.

McDOWELL, District Judge. In the act of Congress of March 3, 1911 (36 Stat. 1037, 1049, c. 209), making appropriation for the support of the Army, is the following:

"* * * Including not to exceed two hundred thousand dollars for the purchase of land accessible to the horse-raising section of the state of Virginia, for the assembling, grazing, and training of horses purchased for the mounted service."

The act of August 1, 1888, to authorize condemnation of land for sites for public buildings and other purposes (25 Stat. 357, 6 Fed. Stats. Ann. 700, 703 [U. S. Comp. St. 1901, p. 2516]) reads as follows:

"That in every case in which the Secretary of the Treasury or any other officer of the government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses he shall be, and hereby is, authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so, and the United States Circuit or District Courts of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the Attorney General of the United States, upon every application of the Secretary of the Treasury, under this act, or such other officer, to cause proceedings to be commenced for condemnation, within thirty days from the receipt of the application at the Department of Justice.

"Sec. 2. The practice, pleadings, forms and modes of proceeding in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

like causes in the courts of record of the state within which such Circuit or.
District Courts are held, any rule of the court to the contrary notwithstanding."

The Virginia statutes relating to the procedure for condemnation
"in like causes" are found in Acts Va. 1902–04, p. 957 et seq. (Code
1904, § 1105f), Acts 1906, p. 452 et seq. (Supp. Code 1910, § 1105f),
and in Code 1904, §§ 15a, 1105f (25). In brief the procedure, so far
as here of interest, is as follows: Notice, of which publication is
made, is given by the party proposing to condemn to the landowner
that the court will be asked to appoint commissioners (five disinterested
freeholders) to go upon the land, hear evidence, and thereafter
report the compensation to be paid to the landowner. After the report
is filed it is to be confirmed by the court unless good cause to
the contrary be shown. If such cause is shown—if, for instance, the
court, acting without a jury, on hearing the evidence, is of opinion
that the amount awarded is excessive or inadequate—the report is
set aside and other commissioners are appointed.

In these cases the Virginia procedure was followed. On the hearing
of the petition for the appointment of commissioners the landowners
demurred. So far as I can recall the point chiefly relied upon
was that the appropriation act of 1911, supra, did not authorize condemnation.
The contention was that acquirement on voluntary sale
by the owner was alone authorized by that statute. The case of Chappell
v. U. S., 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510, was not
mentioned, and there was, I think, no contention that the act of 1888
did not authorize this court to follow the Virginia procedure, if the
act of 1911 did not forbid condemnation. The demurrers were overruled.
Commissioners (agreed upon by counsel) were appointed, and
in due time their reports were filed. To these reports sundry of the
landowners filed exceptions and prayed that the reports be not confirmed.
A time for the hearing on the exceptions was fixed, and at
Charlottesville, sitting without a jury, the court heard the evidence for
both sides and took under advisement the questions on the merits. At
this hearing the opinion in the Chappell Case was called to my attention,
and two motions in behalf of the landowners were founded
thereon. The first was in effect that these causes be dismissed; the
theory being that the only permissible procedure in a condemnation by
the federal government in a federal court in Virginia is to disregard
the state law and proceed ab initio before a common-law jury. The
second motion was in effect that the landowners be at least allowed a
jury trial of the issue as to the adequacy of the amounts awarded by
the commissioners. Both of these motions were overruled, and the
evidence was heard by the court.

[1] 1. As briefly as possible I shall dispose of the contention founded
on the use of the word "purchase" in the appropriation act of 1911.
When used in a statute, the word "purchase" is frequently held to include
any method of acquisition other than by descent. 7 Words and
Phrases, 5853. To construe the word here to mean only acquisition by
buying, we must assume that Congress had in mind the method of acquisition
rather than the general purpose to acquire. The mere use of

the word "purchase"—which may have been used in its technical sense—is not to my mind a sufficient reason for such assumption. If, as we must, we give the members of Congress credit for a reasonable knowledge of human nature, they must be assumed to have known that to restrict acquirement to voluntary sales by the owners would most probably defeat the chief purpose for which the appropriation was made. However, it seems to me that the first section of the act of 1888, supra, makes further discussion unnecessary. The very purpose of that section was to authorize condemnation whenever, theretofore or thereafter, an act of Congress authorized land to be "procured" for public use. Surely no broader word than "procure" could have been used.

[2] 2. Passing for the present the motion to dismiss, the contention that the excepting landowners were entitled to have the question of the adequacy of the amounts awarded by the commissioners tried by a jury will first be considered. The wording of the second section of the act of 1888, supra, was taken from the Conformity Act of 1872 (section 914, Rev. St. [U. S. Comp. St. 1901, p. 684]). It is settled, of course, that this statute does not require a federal court to follow the state procedure, where to do so would defeat the purpose or impair the effect of any congressional statute. In following the state procedure in these cases, and hence in denying a trial by jury of the issue of fact raised as to the adequacy of the sums awarded, the purpose of section 566, Rev. Stats. (U. S. Comp. St. 1901, p. 461), was certainly defeated, if that statute was intended to apply to such cases. This statute was enacted originally by the first Congress in 1789. Act Sept. 24, 1789, c. 20, § 9, 1 Stat. p. 77. It reads:

"And the trial of issues of fact, in the District Courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury."

The language of section 566, Rev. Stats., is the same, except that a further exception in bankruptcy proceedings is added. In view of what is said in the opinion in the Chappell Case, to which I shall advert later, it is with diffidence that I feel constrained to state that in my opinion this statute was not intended to apply to condemnation cases. It is to be noted that the statute does not read that all issues of fact in common-law causes shall be tried by jury. And this omission was doubtless intentional. Issues of fact in contempt cases, for instance, were certainly not intended to be included. It is also a fact that issues of fact as to jurisdiction are frequently and permissibly tried by the court without a jury. Wetmore v. Rymer, 169 U. S. 115, 121, 18 Sup. Ct. 293, 42 L. Ed. 682; Globe Co. v. Landa Cotton Oil Co., 190 U. S. 540, 547, 23 Sup. Ct. 754, 47 L. Ed. 1171. Disbarment proceedings are not tried by jury. Randall v. Brigham, 7 Wall. 523, 530, 540, 19 L. Ed. 285. A motion to set aside a verdict as being contrary to the evidence raises an issue of fact, and many motions for continuance raise issues of fact; but such issues are never tried by jury. Issues of fact may arise in proceedings on habeas corpus, but no jury decides such issues. 9 Ency. Pl. & Pr. 1049.

We know, then, that it was not the intention to require that all is-

sues of fact in common-law causes be tried by the jury, and the conclusion which seems necessary is that the intention of Congress was that only those issues of fact which previous to 1789 had customarily and generally been tried by jury should thenceforth be so tried in the District Courts. So far as the authorities now accessible enable me to learn, it appears that prior to 1789 condemnations by common-law juries were certainly unusual and probably were unknown. In Kohl v. U. S., 91 U. S. 367, 376 (23 L. Ed. 449), it is said:

"The *right of eminent domain* always was a right at common law. * * * That it *was not enforced through the agency of a jury is immaterial;* for many civil as well as criminal proceedings at common law were without jury."

In 7 Ency. Pl. & Pr. 546, it is said:

"Where the Constitution is silent upon the question, the great weight of authority is that a common-law jury is not a matter of constitutional right, inasmuch as a well-settled practice existed both in England and in America, before the adoption of any of our Constitutions, of ascertaining the compensation by means of other agencies than a common-law jury."

In 2 Lewis Em. Dom. (3d Ed.) § 509 (311) it is said:

"In the absence of any express [constitutional] provision on the subject, the authorities almost uniformly hold that it [right to jury trial in condemnation cases] is not a matter of constitutional right. The line of reasoning upon which these decisions are based is that, before any of our constitutions were adopted, it had been the practice in America and England to ascertain the compensation to be paid for property taken for public use by other agencies than a common-law jury, that this practice was well known to the framers of those Constitutions, and that presumably they did not intend by any general language employed to abrogate a practice so universal and of such long standing and against which no complaint existed."

It should here be noted that the Supreme Court has fully settled the proposition that the seventh amendment to the federal Constitution, in its preservation of the right of trial by jury, does not embrace condemnation cases. Secombe v. Railroad Co., 23 Wall. 108, 118, 23 L. Ed. 67; U. S. v. Jones, 109 U. S. 513, 519, 3 Sup. Ct. 346, 27 L. Ed. 1015; Bauman v. Ross, 167 U. S. 548, 593, 17 Sup. Ct. 966, 42 L. Ed. 270; Backus v. Fort Street Union Depot Co., 169 U. S. 557, 569, 18 Sup. Ct. 445, 42 L. Ed. 853. The same reasoning which leads to the conclusion that the seventh amendment to the Constitution does not embrace condemnation cases inevitably leads to the conclusion that condemnation cases were not intended to be embraced within the statute providing for jury trials. The statute (1 Stat. 77 and 80) was enacted (on September 24, 1789) by the same Congress which (on September 29, 1789) proposed the adoption of the first ten amendments to the Constitution. Having full knowledge of the then long existing English and American practice of ascertaining damages in condemnation cases by other agencies than common-law juries, they presumably—

"did not intend by any general language employed to abrogate a practice so universal and of such long standing and against which no complaint existed."

In fact, the rulings of the Supreme Court to the effect that the Constitution does not preserve the right to have issues of fact in condem-

nation cases tried by jury drives us to the conclusion that section 566 does not give such right. The Congress of 1789 was assuredly providing for jury trials in exactly the same cases, and only in the same cases, as those in which the right of jury trial was to be safeguarded by the then proposed seventh amendment—common-law cases in which trial by jury had previously been the customary mode of trial. Issues of fact arising in contempt cases, in disbarment proceedings, on habeas corpus, and in sundry motions (and, by the same token, in condemnation cases) were not intended to be thenceforth tried by jury, because such had not theretofore been the usual method of trial of such issues. In Black, Interp. Laws, p. 233, it is said:

"Whether the statute affirms the rule of the common law on the same point, or whether it supplements it, supersedes it, or displaces it, the legislative enactment must be construed with reference to the common law; for in this way alone is it possible to reach a just appreciation of its purpose and effect. Again, the common law must be allowed to stand unaltered as far as is consistent with a reasonable interpretation of the new law. 'The general rule in the exposition of all acts of Parliament is this: That in all doubtful matters, and where the expression is in general terms, they are to receive such a construction as may be agreeable to the rules of the common law in cases of that nature; for statutes are not presumed to make any alteration in the common law further or otherwise than the act does expressly declare, and therefore in all general matters of law presumes the act did not intend to make any alteration, for if the Parliament had had that design, they would have expressed it in the act.'"

See, also, Shaw v. Railroad Co., 101 U. S. 557, 565, 25 L. Ed. 892.

However, it is insisted that the case of Chappell v. U. S., 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510, requires that federal condemnation cases in the federal courts be tried before a jury. The Maryland statutory procedure for condemnation, which is analogous to the Virginia method, is stated in the opinion at pages 511, 512, of 160 U. S. (16 Sup. Ct. 401, 40 L. Ed. 510). In brief, a jury of 12 is formed, who act out of the presence of the court and return and file their inquisition or award. If the court approves the award, it is confirmed, or, if good cause therefor be shown, the award is set aside, and the court directs another inquisition. In trying the case the District Court of Maryland so far departed from the state practice as to have a jury of 12 men, from the regular panel, hear the evidence in court, under the supervision and direction of the judge. Practically the only concession, if any, made to the requirements of the state law, was that a panel of 20 veniremen was presented, and each side was allowed to strike off 4 names.

Chappell's contention in the Supreme Court is thus stated in the opinion (160 U. S. 512, 16 Sup. Ct. 401, 40 L. Ed. 510):

"The only position, other than the denial of the constitutionality of the act of Congress, argued by the plaintiff in error in this court, was that by the statutes and decisions of Maryland the jury which returned the inquisition was but a body of assessors of damages, in the nature of a special jury of inquest, or board of commissioners, and that he was entitled to have the whole case tried anew by an ordinary jury. In support of this position were cited the following cases, decided under different statutes of Maryland: Tide Water Canal Co. v. Archer, 9 Gill & J. [Md.] 479; Steuart v. Baltimore, 7 Md. 500; State v. Graves, 19 Md. 351 [81 Am. Dec. 639]. But,

198 F.—19

however that ·may be under the statutes of the state, it 'is not·so under· the act of Congress."

. On this branch of the cáse the opinión concludes (160 U. S. 514, 16 Sup. Ct. 402, 40 L. Ed. 510):

"This plaintiff in error had the benefit of a trial by an ordinary jury at the· bar of the District Court on the question of the damages sustained by him; and he was not entitled to a second trial by jury, except at the discretion of that court, or upon reversal of its judgment for error in law."

In the opinion Mr. Justice Gray (160 U. S. 512, 16 Sup. Ct. 401, 40 L. Ed. 510) assumed that the Maryland decisions supported Chappell's contention as to the state procedure, and the entire point of his argument is that the conformity provision of the act of 1888 does not require the federal court to so closely follow a cumbrous, expensive, and dilatory state procedure as to allow a second jury trial to a landowner who had already had a regular common-law jury trial. "Such a construction would unnecessarily and unwisely encumber the administration of justice in the courts of the United States." 160 U. S. 514, 16 Sup. Ct. 402, 40 L. Ed. 510. It is undeniably true that Mr. Justice Gray expressed the opinion (160 U. S. 513, 514, 16 Sup. Ct. 402, 40 L. Ed. 510) that the federal statutes (sections 566 and 648, R. S., being intended) require that federal condemnation cases in the federal courts be tried by, a common-law jury. But it is manifest that the ·appeal of a landowner, who without objection had had a common-law jury trial, did not and could not present for decision this question.

. The ·question presented by Chappell's contention was: Does the conformity provision of the act of 1888 require the federal trial courts to follow a state procedure which allows a landowner, who has had one common-law jury trial, to have a second jury trial? If in dealing with this question a judge, in passing, says that the federal statutes require one jury trial, such statement is necessarily a dictum. No such question was in issue. Chappell had been allowed one jury trial. That case could not have raised for decision the question we are concerned with, unless Chappell had objected to allowing a common-law jury trial in the first instance. While great weight is and should be given to the dicta found in the Supreme Court opinions, it is the clear duty of the subordinate courts to decline to follow any mere dictum, if, after careful consideration, it is believed to be erroneous.

. If I am right in reaching the conclusion that section 566, R. S., does not embrace condemnation cases, there is no federal statute which requires a jury trial in condemnation cases. There is, therefore, no reason why in these cases the direction of the second section of the act. of 1888 should not have been observed and the state procedure followed, unless by so doing we were following a procedure which unnecessarily encumbers the administration of justice in the federal courts. No such charge can be made against the Virginia procedure. In a great many condemnation cases in this state both parties accept the award made by the commissioners, and there is no trial in court at all. If the procedure under the·law of this state were, as Chappell ar--: gued the Maryland procedure was, such that it provided for a jury

trial de novo on exceptions to the commissioners' report, it might be necessary to consider the proposition that such a procedure unwisely encumbers the administration of justice.

The contention that commissioners should not have been appointed at all, and that these proceedings should have been started as common-law cases, to be tried only before a common-law jury, has in effect been disposed of by what has been said. If section 566, R. S., does not require that issues of fact in condemnation cases be tried by jury, and if in following the Virginia procedure we do not unwisely encumber the administration of justice, there is absolutely no reason or excuse for a total and absolute disregard of the direction in the act of 1888 to conform as near as may be to the procedure in like cases in the state courts. The Constitution does not give a right to a jury trial in condemnation cases; no federal statute (if my reasoning be sound) gives such right; no Virginia statute gives it. For a federal court in this state to try a federal condemnation case before a jury is simply to deny to the party who objects to such method of trial a right given by the second section of the act of 1888. In the trial of Chappell's Case the trial court's order (160 U. S. 502, 16 Sup. Ct. 398, 40 L. Ed. 510) expressed the opinion that the question of damages ought to be submitted to a jury. But there is nothing in the report of the case to show that this was not agreed to by both parties.

[3] 3. On the hearing of the exceptions, objection was made by the exceptants to allowing the commissioners who made the reports to testify. I am unable to think of any rule of law which would make the commissioners incompetent. In Hunter v. Railroad Co., 107 Va. 158, 162, 59 S. E. 415, 17 L. R. A. (N. S.) 124, the commissioners testified. In 2 Lewis, Em. Dom. (3d Ed.) § 652 (433), it is said:

"In regard to the competency of witnesses the general rules apply."

[4] 4. Subject to objection, I heard testimony as to prices paid by the government to adjoining landowners for land somewhat similar to the tracts here in controversy. The best conclusion I can reach is that the weight of authority supports the objection of the exceptants. 2 Lewis, Em. Dom. § 667 (447); Mills, Em. Dom. § 170. So far as appears, the landowners who sold to the government may have been influenced by fear of condemnation. In reaching my conclusion on the merits, I disregard the evidence referred to.

5. Some of the witnesses were asked to state the value, without regard to the fact that the government wanted the land. While no exception was based on this fact, it may be well to note that in Five Tracts of Land v. U. S., 101 Fed. 661, 665, 41 C. C. A. 580, this theory is approved.

[5] 6. After careful consideration, I have concluded that I should confirm the reports in each of these cases. No attempt will be made to discuss the evidence in detail. A very considerable number of honest witnesses expressed opinions to the effect that the land is worth considerably more than the commissioners have reported. Opin-

ion evidence is advisory only, and is not binding. The Conqueror, ·166·U. S. 131, 17 Sup. Ct. 510, 41 L. Ed. 937, et seq. The commissioners in these cases were agreed upon by the parties. The impression made upon me by their appearance and demeanor upon the witness stand was most favorable. There has been no suggestion of any improper influence brought to bear upon them. To my mind they undoubtedly intended to award full and fair compensation. The weight to be given to their reports, under both the general authorities and under the Virginia decisions, is such that I cannot in any of these cases find sufficient reason for refusing to confirm.

In Hunter v. Railroad Co., supra, 107 Va. 158, 170, 171, 59 S. E. 415, 419 (17 L. R. A. [N. S.] 124), is the following:

"In Cranford Paving Co. v. Baum, 97 Va. 501, 24 S. E. 906, this court said: 'When it becomes necessary to ascertain what is just compensation for land taken for public use, as in the present case, the statute directs that the court shall appoint five disinterested freeholders as commissioners to perform this duty, and requires that, in its performance, they shall themselves view the land so taken. The law lays great stress upon the matter of the view, and justly attaches great weight to the report of the commissioners. They are greatly aided, as they were in this case, by the evidence of their own senses. They have the advantage of seeing the land itself which is taken, and judging as to its value. * * * They have, as they also had here, after having their attention especially drawn to the element of damage relied upon, the opportunity to apply the evidence produced before them to the subject of the controversy, and to determine the weight to be given to its several parts. We are without the benefit of their opportunities, and of what they saw and were the judges, and it should be a very clear case, indeed, of inadequate compensation, to justify the court in disturbing their sworn, deliberate, and disinterested judgment as disclosed in their report.'

"In Shoemaker v. United States, 147 U. S. 282, 13 Sup. Ct. 361 [37 L. Ed. 170] the opinion, quoting from Mills on Em. Dom., says: 'An appellate court will not interfere with the report of commissioners to correct the amount of damages, except in cases of gross error, showing prejudice or corruption. The commissioners hear the evidence, and frequently make their principal evidence out of a view of the premises, and this evidence cannot be carried up, so as to correct the report as being against the weight of evidence. Hence, for an error in the judgment of commissioners in arriving at the amount of damages there can be no correction, especially where the evidence is conflicting. Commissioners are not bound by the opinions of experts or by the apparent weight of evidence, but may give their own conclusions.' See, also, the recent case of Tidewater Ry. Co. v. Cowan, 106 Va. 817, 56 S. E. 819."

See, also, 7 Ency. Pl. & Pr. 613, 614; 15 Cyc. 905 et seq.; 2 Lewis, Em. Dom. § 776 (524); Columbia Co. v. Rudolph, 217 U. S. 547, 560, 30 Sup. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854; 5 Ency. Ev. 248; Railroad Co. v. Pack, 6 W. Va. 397.