## UNITED STATES v. CRARY et al.
### No. 895.

District Court, W. D. Virginia.
May 11, 1932.

R. O. Crockett, Sp. Asst. Atty. Gen., for the United States.

John T. Harris, of Harrisonburg, Va., and Edwin B. Jones, of Monterey, Va., for United States Lumber Co.

Edw. C. Martz, of Harrisonburg, Va., for Crary's Heirs.

McDOWELL, District Judge.

## I. The Pleadings.

This is a condemnation proceeding instituted in this court by the United States to acquire three tracts of land lying in this judicial district. The petition to condemn asserts that the petitioner is authorized by the act of Congress of March 1, 1911, c. 186, 36 Stat. 961, to acquire the lands sought for the protection of the watersheds of navigable streams; and alleges the performance of the various acts made necessary by that statute, which is generally known as the Weeks Act.

Two of the tracts of land are stated to lie in Highland county, and one of them partly in Highland and partly in Augusta county, in this state.

Next follows a reference to the act of August 1, 1888, 25 Stat. 357 (40 USCA §§ 257, 258); an allegation that it is necessary and advantageous to the petitioner to acquire the lands above referred to by condemnation, and (pp. 2, 3) that this proceeding has been instituted by the Attorney General.

The petition (p. 3) then asserts the reasons for an ineffectual effort to acquire the land by purchase.

It is also alleged that plats and descriptions of the three tracts are filed with the petition, and "that there is also filed in the clerk's office of this court, marked Exhibit B—1, a memorandum showing the names and residences of the owners of said lands and showing the quantity of land which is sought to be condemned; that the said plats and descriptions and memorandum, marked as aforesaid, are made parts of the petition; that the interests or estates intended to be taken in the said lands are titles in fee simple; * * * that the lands sought to be condemned are wanted for the uses and purposes of petitioner as aforesaid."

The concluding paragraph (p. 4) reads: "Wherefore, your petitioner prays for the appointment of commissioners, as provided for by law, to ascertain what will be a just compensation for the lands proposed to be condemned for its uses, and award the damages, if any, resulting to the adjacent or other property of the owner, or to the property of any other persons, beyond the peculiar benefits that will accrue to such properties, respectively, from the acquisition of the said land by your petitioner, and converting it to its uses, as aforesaid."

Exhibit 1 is a contract, dated July 7, 1930, for the purchase of the three tracts of land sought to be condemned, made between the United States, by the Secretary of Agriculture, and a representative of some of Eleanor Crary's heirs. Exhibit 2 is a supplemental contract reducing the agreed purchase price. In the original contract is a paragraph which reads in part as follows: "It is further mutually understood and agreed that, if the vendors do not, within one year from the date of the execution of this agreement, show in themselves a safe title, satisfactory to the Attorney General of the United States, to all the hereinbefore described lands, or do not, when called upon by the proper officer or agent of the United States, promptly convey said title or titles to the United States, as provided for herein, then and in that event the portion or portions of the lands, the vendor's title to which is not satisfactory to the Attorney General of the United States or which the vendors have failed to convey to the United States as stipulated and provided herein, shall be acquired by the institution of condemnation proceedings. * * * "

The memorandum above referred to contains the names of 35 residents of Virginia of address known to the petitioner; of 29 nonresidents of known address; of 40 persons of unknown address; as well as "unknown parties."

It appears from the papers in the file

that the nonresident defendants, the defendants of unknown address, as well as the unknown defendants were given notice by publication; and that numerous resident defendants, including the United States Lumber Company, were served with notice. See sections 4364 and 4365, Codes 1919 and 1930.

On April 29, 1932, counsel for the United States Lumber Company, appearing specially, presented a pleading, which has been indorsed "Objections to Jurisdiction," and filed. This pleading is not verified, and is not supported by affidavit.

At the time stated, the government by counsel informally objected to the foregoing pleading as insufficient in law. This may, and I believe should, be regarded as a demurrer to the objections to jurisdiction.

## II. Questions of Law.

The objections to jurisdiction contain several grounds of objection to the jurisdiction, possibly of the subject-matter, and certainly of the cause, and also an objection to the jurisdiction of the person of the defendant the lumber company. I shall quote the several paragraphs of the objections, and discuss the questions thereby raised separately. As a matter of convenience I shall discuss first the objections to the jurisdiction of the subject-matter and of the cause, and later the objection to the jurisdiction of the person.

### A. Objections to the Jurisdiction of the Subject-matter and of the Cause.

The prefatory paragraph of the "Objections to Jurisdiction" reads as follows: "The United States Lumber Company, a West Virginia Corporation, which has been proceeded against in the above entitled cause by publication requiring it and others to appear and do what may be necessary to protect their interests in said suit, now comes by its attorneys and enters its appearance specially for the purposes hereinafter set out and for no other purpose, and says:"

There is an error in the foregoing statement. The United States Lumber Company was not proceeded against by publication. The returned notices in the case papers show that a notice addressed to Albemarle Grocery Company and to the United States Lumber Company, was served on November 27, 1931, on the president of the Albemarle Grocery Company; and on Nov. 28, 1931, at Monterey, on "E. B. Jones, Statutory Agent," by Deputy Marshal J. C. Brown.

### Ground No. 1.

"1st: Defendant is the owner in fee simple and is and has been for years in open actual and notorious possession and enjoyment by residence, cultivation and control of the parcels of land described in said petition."

I can perceive no reason for a want of jurisdiction to entertain a proceeding instituted by the United States in this court to expropriate land lying in this judicial district because the lumber company is in possession of the three tracts of land now sought to be condemned.

I shall further along comment on so much of the foregoing ground of objection as undertakes to allege facts intended to show a possessory title in the lumber company.

### Ground No. 2.

"2nd: This court is without jurisdiction to entertain and grant the relief prayed for by petitioner because nowhere in the Act of Congress of March 1, 1911 (36 Stats. 961) or the Act of Congress approved August 1, 1888 (25 Stats. 357) is authority given to petitioner to take the lands of this defendant in invitum, nor is such authority elsewhere found in the Constitution of the United States or the laws made in pursuance thereof, the averments in said petition as to the authority of petitioner and the jurisdiction of this court to the contrary notwithstanding."

The question here raised is as to the authority of the United States to acquire land by condemnation. I have discussed this question in U. S. v. Beaty, 198 F. 284, 286, and again in U. S. v. Graham & Irvine, 250 F. 499, 501, 502. The rulings made in those cases as to this question, as I read the opinion, have been approved in Hanson Lumber Co. v. U. S., 261 U. S. 581, 587, 43 S. Ct. 442, 444, 67 L. Ed. 809. In the opinion in that case is the following: "The Acts of July 25, 1912, and of August 1, 1888, make it obvious that the Secretary of War was authorized to acquire the property by purchase or condemnation. The authority to condemn conferred by the last-mentioned act extends to every case in which an officer of the government is authorized to procure real estate for public uses. See United States v. Beaty (D. C.) 198 F. 284 (reviewed in [Beatty v. U. S. (C. C. A.)], 203 F. 620, 122 C. C. A. 16) but not overruled on this point, and writ of error dismissed in [U. S. v. Beatty], 232 U. S. 463, 34 S. Ct. 392, 58 L. Ed. 686;

United States v. Graham & Irvine (D. C.) 250 F. 499."

## Ground No. 3.

"3rd. The jurisdiction of this court in this proceeding cannot be grounded upon an Act of the General Assembly of Virginia as is in said petition averred, because petitioner can only exercise the right of eminent domain in pursuance of the Constitution of the United States and the laws made in pursuance thereof, and the State of Virginia, under the constitution and laws of the United States and the constitution of Virginia, cannot consent to the acquisition of petitioner by direct purchase or by condemnation or otherwise of land in this state for the purpose of forest conservation and preservation of natural resources or necessary to the regulation of the flow of navigable streams. The Legislature of Virginia may consent to the purchase by petitioner of places for the erection of forts, magazines, arsenals, dockyards and other needful buildings, and perhaps consent from time to time to the acquisition by petitioner of certain *limited and particular parcels* in the state for the purpose of forest conservation and preservation of natural resources, but it can not consent, as is attempted in the Act upon which petitioner grounds the jurisdiction of this court to the acquisition by petitioner of *unlimited and undefined territory* in this state for the purpose of forest conservation and preservation of natural resources, or so called conservation of the navigability of navigable streams."

If I correctly understand the foregoing ground of objection, the purpose of the pleader was not to assail the constitutionality of the Weeks Act (36 Stats. 961), but to attack the validity of the Virginia statute (section 19, Code 1930) consenting to the acquisition by the United States of land in this state by condemnation for the national forests. The "Virginia Code of 1930" is not an official codification of the statute law of this state. It is the work of the editorial staff of a private publisher. At the conclusion of section 19 are the words "(Code 1887, § 17)." The reference should have included section 19, Code 1919, an official codification. The revisors' note to section 19, Code 1919, shows that, in part, this section was taken from sections 17, 18, and 19, Code 1887, also an official codification, and in part from Acts 1901–02, pp. 565, 566; Acts 1912, p. 563; Acts 1916, p. 793; Acts 1918, p. 568. Section 19 of Code 1919 itself first introduced the italicized words in the following partial copy of this statute: "The consent of this

State is hereby given to the acquisition by the United States, or under its authority, by purchase, lease, condemnation, or otherwise, of any land acquired, or to be acquired in this State by the United States * * *. *for the conservation of the forests or natural resources of the State, or for the improvement of the rivers, harbors, and coast defenses * * * and for any other purposes of the government of the United States. * * * "*

A number of the earlier statutes refer to article 1, § 8, cl. 17, of the Federal Constitution. For present purposes it may be assumed that the clause above mentioned is not sufficiently broad to include condemnations, under the Weeks Act, for the national forests. However, article 1, § 8, cl. 3, is broad enough: "The Congress shall have power * * * 3. To regulate commerce with foreign nations, and among the several states, and with the Indian Tribes."

See, also, article 1, § 8, cl. 18.

Section 7 of the Weeks Act of March 1, 1911, c. 186 (36 Stats. 961, 962 [16 USCA § 516]), reads in part: "The Secretary of Agriculture is authorized to purchase *' * lands. * * * No deed or other instrument of conveyance shall be accepted * * under this section until the legislature of the State in which the land lies shall have consented to the acquisition of such land by the United States for the purpose of preserving the navigability of navigable streams."

As the word "purchase" as used above was intended to include acquisition by condemnation, Hanson Co. v. U. S., supra, 261 U. S. 581, 587, 43 S. Ct. 442, 67 L. Ed. 809, it is at least possible that the expression "no deed or other instrument of conveyance" was intended to include judgments in condemnation suits. If section 7 of the Weeks Act is so construed, no question arises at this point as to the right of the United States to acquire land under the power to regulate commerce without the consent of the state. And, for present purposes, I shall assume that the construction of section 7 suggested above is correct. I make this assumption the more readily as government counsel has alleged in the petition to condemn (p. 2) "that the Legislature of the State of Virginia has consented to an acquisition of said land. * * * "

Making such assumption, the contention is that, because the Virginia statute giving consent (section 19, Code 1919 and 1930) does not relate to "limited and particular parcels," but gives consent to the acquisition of

"unlimited and undefined territory," the statute is unconstitutional. No particular provision of the state Constitution is referred to, and I do not recall any provision which thus limits the power of the Legislature. The intent shown by the new provisions in section 19, first added in 1919, clearly is to give consent to the acquisitions of land by the United States, by condemnation or otherwise, under the Weeks Act, without limit. And unless and until some provision of the Virginia Constitution, limiting the power to give such consent, has been pointed out, I do not know what there is for discussion. It is not strictly necessary to cite authority for the assertion that the power of the Legislature is plenary, unless prohibited by the state or the Federal Constitution. But see Breckenbridge v. County School Board, 146 Va. 1, 5–6, 135 S. E. 693, 695, in which it was said: "It is the settled law of this state that, outside of the powers ceded to the federal government, the power of the General Assembly to enact statutes is without limit, except as restrained by the Constitution of the state. The Constitution of the state is a restraining instrument, and not a grant of power. If there be any restraints by implication, the restraint must be so necessary and so plainly manifest as to require the implication in order to enforce the restraints expressly imposed."

It cannot be thought that the provisions of either the Federal or the state Constitutions, forbidding the deprivation of property without due process of law, are here applicable, for both section 19, Code 1919 and 1930, and the Weeks Act contemplate regular condemnation suits, which afford due process.

### Ground No. 4.

"4th: The petitioner has not complied with the requirements of section 4363 of the Code of Virginia, 1930, as to these defendants, the owner thereof in open, visible, exclusive possession and occupancy thereof as aforesaid, because it has made no attempt to agree with defendants upon the price or terms of the land proposed to be taken, nor has petitioner filed *in the proper office* a memorandum showing the names and residences of the owner or owners of the land proposed to be taken. The petitioner states in said petition that it has agreed with some of the owners to purchase the land. It must recite the names of the owners with whom it has agreed. This defendant is a stranger in title to the parties with whom petitioner has agreed upon the price of the land, and cannot be convened in this proceeding in

order that the title of this defendant conflicting, hostile and adverse to the title of the persons with whom petitioner has agreed, who are not now and never have been at any time in possession of the land, or any part thereof, shall be tried and determined."

There are here two distinct grounds of objection; the first being based on a failure to observe section 4363, Codes 1919 and 1930, and the second based on the theory that this proceeding can only be maintained in a state circuit court.

Reserving the objection founded on section 4363, which is to the jurisdiction of the person of the lumber company, I shall here discuss the latter objection, which I understand to be the meaning of the statement in ground 4: " * * * Nor has petitioner filed *in the proper office* a memorandum showing the names and residences of the owner or owners of the land proposed to be taken."

It is alleged in the petition, and it is a fact, that the memorandum required by section 4364, Codes 1919 and 1930, was filed with the petition in the clerk's office of this court at Lynchburg.

In the Act of Aug. 1, 1888, c. 728, § 1 (25 Stats. 357 [40 USCA § 257]), after authorizing condemnations, is the following: "And the United States district courts of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation. * * *"

If there were any conflict between this statute and the state statute, article 6, § 2, of the Federal Constitution settles such conflict in favor of the jurisdiction of this court. The federal statute is a part of "supreme law of the land."

### Ground No. 5.

"5th: Respondent avers that the parties with whom petitioner says it has agreed as to the purchase price of the land are the Crary heirs—the price being $6.25 per acre. The jurisdiction of this court is therefore confined to those claiming under the Crary title and cannot be invoked to try a hostile line of title *when no effort has been made to agree with the owner of the opposing title.* The proceeding might as well be based on an offering of the property by a mala fide claimant."

I read this ground of objection as an amplification of the objection to the jurisdiction of the person of the lumber company. Even if it were properly held that this court has no jurisdiction of the lumber company,

such fact would not, I believe, prevent the government, if it so desires, from proceeding to acquire by condemnation any right to, or in the land of, the other defendants. Therefore this objection need be considered only in connection with the objection to the jurisdiction of the person of the lumber company raised in ground No. 4.

### Ground No. 6.

"6th. This respondent says that this court is without jurisdiction to entertain and grant the relief prayed for in said petition as to it, because even if the Act of Congress of March 1, 1911 (36 Stats. 961) authorized petitioner to exercise the right of eminent domain, such authority is plainly restricted by the Act to those cases in which the petitioner through the Secretary of the Agriculture has contracted to purchase lands as provided in said Act and cannot be extended to the taking of property of parties *strangers to the contract,* who do not claim by, through or under the parties in privity with the petitioner or the predecessors in title of the parties under contract of sale to petitioner their title at the rate of $6.25 per acre."

This seems to me to raise no question except that discussed under "Ground No. 2."

### Ground No. 7.

"7th. Under section 19 of the Code of Virginia of 1930, the consent of the State of Virginia has been given to the acquisition by the United States by purchase, lease, condemnation or otherwise of any land acquired or to be acquired in this state 'for the conservation of the forests or natural resources of the state.' By section 4388a et seq. of the Code of Virginia, 1930, the State of Virginia has made provision for the acquisition by condemnation of such land by the exercise of the right of eminent domain where the United States and the land owners are unable to agree upon the purchase thereof. *The State having authorized the acquisition of land and prescribed the method of the exercise of the right of eminent domain for the purposes aforesaid,* the United States must exercise the right of eminent domain agreeable to *the method prescribed by section 4388a et seq.* of the Code of Virginia of 1930."

Section 4388a, et seq., Code 1930, was copied from the Virginia Act of March 16, 1918, c. 348, Acts 1918, pp. 509–528. Counsel for the lumber company are certainly right in asserting that the proceeding here was not instituted in accordance with that statute. I have hereinabove quoted the last paragraph of the petition to condemn as it shows indubitably that this proceeding was instituted in accordance with chapter 176, Code 1919 (section 4360 et seq.), and sections 4360–4388, Code 1930. As is shown by this entire statute of 1918, especially by section 3 (Code 1930, § 4388c), this statute was enacted to provide a procedure for condemnation proceedings instituted by the United States in the state circuit courts. If, by possibility, this statute is regarded as showing an intent to require the United States to institute its condemnation suits in the state circuit courts, I must deny that the Legislature has the power to make such requirement. The supreme law of the land gives the United States the right to bring its condemnation suits in its own courts. The act of August 1, 1888, supra, 25 Stats. 357, so provides in express terms.

The reason for my belief that the procedure prescribed in the act of 1918 should not be followed in this court has been fully stated in U. S. v. Chichester (D. C.) 283 F. 650.

### B. Objections to the Jurisdiction of the Person.

As I read ground 1, the chief part of ground 4 and ground 5, the intent of counsel for the lumber company was to allege (1) that the lumber company is the owner by possessory title of the tracts sought to be condemned; and (2) that, because the government has made no attempt to purchase the land from the lumber company, it has been denied a right given it by section 4363, Codes 1919 and 1930.

(1) In passing it should be said that the pleading is insufficient to allege title by possession in that it fails to assert possession for the period of limitation, and that the possession has been under a claim of right. These omissions could be cured by verified amendment; but I believe that it would be futile to make offer of such amended pleading, and I shall therefore give no opportunity to amend.

(2) Section 4363 reads as follows: "No proceeding shall be taken to condemn land or other property, nor any interest therein, until a bona fide, but ineffectual, effort has been made to acquire the same from the owner thereof by purchase, except where such consent cannot be obtained because of the incapacity of the owners or one or more of them, or because such owner is unknown or cannot with reasonable diligence be found within this State."

This statute is not a procedural statute. It is a substantive rule of law, giving to landowners, in cases in which the statute is applicable, a very valuable and substantial right. It has been declared a jurisdictional statute. See Charles v. Big Sandy & C. R. Co., 142 Va. 512, 516, 129 S. E. 384. It does not at all relate to the practice, pleadings, or forms or modes of proceeding in condemnation suits. It relates only to acts to be done in pais, and before a suit to condemn shall have been instituted.

In the case of In re Secretary of Treasury of United States (C. C. N. Y.) 45 F. 396, 399, 11 L. R. A. 275, it was said by Judge Wallace: "And in selecting the present proceeding the law officers of the government have probably considered that the United States ought not to be compelled to resort to a suit in which the petition must state the facts showing the necessity of the acquisition of the property for public use, and that there has been an effort to acquire it by purchase. Undoubtedly the Code provisions are designed to permit the property owners to contest the necessity of the acquisition of the property sought to be condemned, and to defeat a condemnation, unless prior to instituting suit there has been a reasonable attempt to acquire it by purchase. But these are matters which go to the substance of the right to acquire property by condemnation. They are not matters of form or practice or pleading; they are of the essence of the cause of action. Consequently if these obnoxious averments should be omitted in a petition in behalf of the United States, it would seem that the petition would nevertheless conform as near as may be to the requirements of the Code."

In Kanakanui v. U. S. (C. C. A. 9) 244 F. 923, 925, the court had before it the act of August 18, 1890 (26 Stats. 315, 316), which authorized condemnation proceedings, "to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." In the opinion it was said: "By virtue of that statute the federal courts are required to follow the local practice, pleadings, forms, and proceedings so enjoined. They are not required to observe any provision concerning any matter of substance prescribed in the local procedure. Such is the doctrine of the decisions wherever the question has arisen."

In the case of In re Condemnations for the Improvement of Rouge River (D. C. Mich.) 266 F. 105, 117, 118, referring to the act of April 24, 1888, c. 194 (25 Stats. 94 [33 USCA § 591]), which also contained the words quoted last above, it was said: "This statute, however, subjects such proceedings to the state laws only in respect to matters of procedure and not to matters of substance. Kanakanui v. United States, 244 F. 923, 157 C. C. A. 273. The right to determine the necessity of the taking of property for public use, under the power of eminent domain, is necessarily incident to the sovereign power of the United States government to determine for itself whether it needs any particular property for such use. This right and power cannot be limited or affected by the laws of a state unless Congress so provides, and no federal legislation to that effect has been enacted."

As section 4363 is not a procedural statute, there is no federal statute which requires that this state statute be observed as a preliminary to the institution of a condemnation suit by the United States. The Congressional Act of August 1, 1888, c. 728 (25 Stats. 357), requires conformity "as near as may be" only to the state procedure, and the Weeks Act of March 1, 1911, c. 186, § 7 (36 Stats. 961, 962), requires only the consent of the state in which the land lies.

Treated as a substantive enactment there are two sufficient reasons for a belief that the United States is not bound by section 4363; both of which reasons were suggested, but not discussed, in U. S. v. Graham & Irvine (D. C.) 250 F. 499, 503.

(a) Except for the generality of the words, "no proceeding shall be taken to condemn land * * *," there is in the state statute in question nothing which could possibly indicate an intent that the statute should apply to condemnations instituted by the United States. The generality of the language is fairly attributable to the fact that the statute was intended to apply to condemnation suits by sundry corporations given the power of condemnation, by the cities and incorporated towns of this state, and by sundry state institutions and agencies.

In 36 Cyc. 1171, 1172, it is said: "The state, or the public, is not to be considered as within the purview of a statute, however, general and comprehensive the language of such act may be, unless expressly named therein, or included by necessary implication."

This statute does not expressly or by necessary implication refer to the United States. Moreover, it would be improper to impute to the Legislature an intent to im-

pose unbecoming conditions on the exercise by the United States of its power to acquire land by condemnation.

And it should here be said that in the statute (section 19, Codes 1919 and 1930), whereby the state consented to the acquisition by the United States of lands for the conservation of forests, etc., there is again nothing to indicate in the slightest an intent to restrict the inherent and sovereign powers of the federal government, or to impose on it any condition precedent to the exercise of its right to condemn land in this state. A more completely unconditioned and unrestricted consent could not well have been expressed.

▆ (b) Another reason for a belief that section 4363 does not apply to condemnations by the federal government is that, even if the statute exhibited an intent that it should apply, such an intent would be beyond the powers of the state Legislature.

The Weeks Act, 36 Stats. 961, was certainly enacted in pursuance of the power to regulate interstate commerce. Its title so shows, and in section 3 (36 Stat. 961), the appropriation is made in part for the "acquirement of lands located on the headwaters of navigable streams or those which are being or which may be developed for navigable purposes." See, also, section 6, p. 962 (as amended, 16 USCA § 515).

▆ The court will take judicial notice of the notorious fact that land lying in Highland county, as well as land lying in Augusta county, Va., are on the headwaters of one or another navigable stream, each of which is in part used in interstate commerce.

▆ The constitutionality of the Weeks Act is plain enough to need no discussion. See Legal Tender Cases, 110 U. S. 421, 440, 4 S. Ct. 122, 28 L. Ed. 204; Logan v. U. S., 144 U. S. 263, 283, 12 S. Ct. 617, 36 L. Ed. 429; Second Employers' Liability Case, 223 U. S. 1, 47, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1, 8, 8 S. Ct. 811, 31 L. Ed. 629.

When the federal government, in pursuance of its power to regulate interstate commerce, and in accordance with its own statutes, undertakes to condemn land in any state, the Legislature of that state has no power, without the consent of the federal government, to impose at least burdensome conditions or restrictions on the exercise of the federal government's power of condemnation. To hold otherwise would be to deny that the Federal Constitution and laws made in pursuance thereof are the supreme law, and to assert that the exercise of the power to regulate interstate commerce is subject to the control of the states.

In respect to condemnation suits to acquire forest lands on the upper tributaries of the James river, of the Potomac river, and the New river, which are in mountainous territory, section 4363 does impose a distinctly burdensome condition. As is shown by the petition to condemn in this case, the Attorney General was not satisfied to purchase the lands in question from the Crary heirs, and the great number of persons made defendants, "who are or may be interested" in said lands, goes to show the difficulty, not to say the impossibility, of determining who is the "owner" of these lands. The petition clearly indicates that here, as is usual in regard to mountain lands in this state, there are conflicting claims of title of such character as to make it unsafe to acquire title by purchase, and to make it necessary to institute condemnation proceedings in which a hundred or more persons must be made defendants by name, as well as an unknown number of unknown defendants.

The federal statute of August 1, 1888, c. 728 (25 Stats. 357), authorizes condemnation suits by the government; the Weeks Act (36 Stats. 961) authorizes the acquisition of the land here in controversy; section 4363 of the Codes of 1919, 1930, if intended to apply to condemnation suits by the government, imposes a burdensome, in some cases an impossible, condition as a prerequisite to condemnation proceedings to acquire land, the ownership of which is disputed, as in the case at bar. If the validity of a state statute of exactly this kind has ever been decided, I have not in such incomplete search as I have been able to make found such case. However, the principle involved has been upheld too often to make it necessary to cite authorities relating to state statutes which are of the exact nature of section 4363. Sanitary District v. U. S., 266 U. S. 405, 426, 45 S. Ct. 176, 69 L. Ed. 352; U. S. v. Ferger, 250 U. S. 199, 203, 39 S. Ct. 445, 63 L. Ed. 936; Smith v. Alabama, 124 U. S. 465, 473, 8 S. Ct. 564, 31 L. Ed. 508; Second Employers' Liability Case, 223 U. S. 1, 54, 55, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Hammer v. Dagenhart, 247 U. S. 251, dissenting opinion pages 278, 279, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724.

▆ It may be contended that the right of the government to deny that section 4363 is applicable in this case has been waived. It

is true that in the petition to condemn this statute is treated as binding, and compliance therewith, in some sort, is alleged. However, I cannot agree that counsel for the government have the power to waive the right of the United States in this respect.

The government is not bound by a default or a mistake made by its agents when engaged in the prosecution of a public right. U. S. v. Kirkpatrick, 9 Wheat. 720, 735, 6 L. Ed. 199; U. S. v. Vanzandt, 11 Wheat. 184, 190, 6 L. Ed. 448; Dox v. Postmaster General, 1 Pet. 318, 326, 7 L. Ed. 160; Gaussen v. U. S., 97 U. S. 584, 590, 24 L. Ed. 1009; Steele v. U. S., 113 U. S. 129, 134, 135, 5 S. Ct. 396, 28 L. Ed. 952; Utah Power Co. v. U. S., 243 U. S. 389, 409, 37 S. Ct. 387, 61 L. Ed. 791.

Moreover, I believe it is beyond the authority of any government counsel to waive the right of the United States here in question. See U. S. v. Chemical Foundation, 272 U. S. 1, 20, 21, 47 S. Ct. 1, 71 L. Ed. 131, a case which in principle is analogous to the case at bar.

In section 4364, Codes 1919 and 1930, it is provided: " * * * The petition shall also set forth compliance with the preceding section and the manner of such compliance." This is a procedural statute; but for the reasons given above it cannot apply to condemnation suits instituted by the government. By section 2 of the act of August 1, 1888 (25 Stats. 357 [40 USCA § 258]), conformity as near as may be in procedure is required; but to conform to the portion of section 4364 quoted above would at least impair the effect of section 1 of the federal statute last quoted [40 USCA § 257] as well as the effect of the Weeks Act. See Luxton v. North River Bridge Co., 147 U. S. 337, 338, 13 S. Ct. 356, 37 L. Ed. 194.

It follows that the demurrer of the government to the objections to jurisdiction must be sustained as to all of the grounds asserted.