UNITED STATES v. MIDLAND NAT. BANK OF BILLINGS et al.

No. 837.

District Court, D. Montana. Billings Division.

Aug. 5, 1946.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., and C. W. Buntin, Sp. Asst. to the U. S. Dist. Atty., of Lewistown, Mont., for plaintiff.

Kenneth R. L. Simmons and Roy F. Allan, both of Billings, Mont., for defendants Simmons & Allan.

Coleman, Jameson & Lamey, of Billings, Mont., for defendant Midland National Bank.

PRAY, Judge.

The property sought to be acquired in the above-entitled action is a leasehold interest in certain floor space in the Fratt Building in the city of Billings, Montana, consisting of 715 square feet, and known as Rooms 220, 221 and 222. The public use for which this described property is sought is to provide quarters for the administration of the Social Security Act, 42 U.S.C.A. § 301 et seq., and the space sought to be condemned has been for the past several years occupied as offices and quarters in administering the aforesaid act, and it is alleged to be necessary and advantageous to the Government to retain them.

This case is before the court at this time on the motion to dismiss the action for the reasons alleged that the complaint does not state a claim against defendants upon which relief can be granted, has no basis in law, and, further, that Congress has not authorized the proceedings herein.

The principal question here is whether there is authority of law for acquiring the property above described through condemnation proceedings, in view of the language employed in the statute, which was "to procure space by lease", as hereinafter referred to. Many authorities are to be found where the law authorized the procuring or acquiring of private property by purchase for public uses, wherein the right to condemn was not specifically stated in the statute, but, nevertheless, the courts held that the right so to proceed was necessarily included by implication, otherwise the purpose of the law might be thwarted by persons who refused to negotiate a sale with representatives of the Government upon any terms whatever, notwithstanding the important and urgent public use of the property or the fact that just compensation would be awarded the owner for the taking.

It appears necessary from a request made by the Commissioner of Public Buildings, approved by the Federal Works Administrator, to the Attorney General to condemn the floor space above-described for the aforesaid public use. One of the sections relied upon is 257 of Title 40 U.S.C.A., which provides for the condemnation of sites, jurisdiction, and so forth, and the following is an excerpt which seems to have application here: "In every case in which the Secretary of the Treasury or any other officer of the Government has been or shall be, authorized to procure real estate for the erection of a public building or for other public uses he shall be authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so. And the United States district courts of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation, and it shall be the duty

of the Attorney General of the United States, upon every application of the Secretary of the Treasury, under this section and section 258 of this title, or such other officer, to cause proceedings to be commenced for condemnation, within thirty days from the receipt of the application at the Department of Justice."

Counsel have laid great stress upon the word "procure" as used in this section, claiming for it the broadest interpretation and application and asserting that it is not confined to voluntary sale to the Government by the owners of the lands, citing United States v. Beaty, D.C. Va., 198 F. 284.

It is also necessary to quote another section which likewise has special application to the facts in this case, which is section 304c, Title 40 U.S.C.A., which was later amended, a material part of which reads as follows:

Procurement of space for Federal agencies outside of the District of Columbia; assignment; payment of expenditures.

"304c. The Commissioner of Public Buildings, with the approval of the Federal Works Administrator, is further authorized to procure space by lease, on such terms and for such period not in excess of five years as he may deem in the public interest, for the housing of any Federal agency or agencies outside of the District of Columbia, except the Post Office Department, * * * ".

It also appears from section 304e of the above title that the term "Federal agency" as used in the act means any executive department, independent establishment, commission, board, bureau, division, or office in the executive branch, or other agency of the United States, including corporations wholly owned by the United States.

It will be noted that the language of section 304c provides for procuring space by lease on such terms and for such period not in excess of five years as may be deemed in the public interest for the housing of any said agency or agencies outside of the District of Columbia.

The principal question, as before noted, is whether a proceeding by condemnation to acquire the floor space sought in the Pratt Building is authorized under the provisions of law before quoted.

It was held in Albert Hanson Lumber Co. v. United States, 5 Cir., 277 F. 894, 896, as follows:

"The question in this case is not whether, in the absence of a statute conferring any power on a public officer to initiate condemnation proceedings, the giving of authority to purchase certain real estate for public uses would confer authority upon him to acquire the same by condemnation, if he was unable to acquire it by contract, but whether an officer, who has general authority under a statute, when he may be authorized to acquire real estate for public uses, to institute condemnation proceedings whenever he considers such course necessary or advantageous, is deprived by implication of such authority, where he is authorized to purchase certain real estate for a public use at not exceeding a given price.

"Repeals by implication are not favored. United States v. Greathouse, 166 U.S. 601, 605, 17 S.Ct. 701, 41 L.Ed. 1130. The true rule is to construe the statutes together, and that the giving of authority to purchase the real estate, there being no expression of purpose to withdraw, or limit, the existing power to resort to condemnation, left it within the power of the officer authorized to purchase, to resort to condemnation, if he deemed it necessary or advantageous. We therefore conclude that the proceeding to condemn was authorized by law, and the judgment therein is valid.

"Nor do we think that the power conferred by the act of August 1, 1888, would not confer power to condemn property required for the public use here designated. The grant of power is to any public officer authorized to procure real estate. Many acquisitions may be authorized for public purposes other than building sites and to be made by public officers in no way connected with the erection of structures. It is not probable that Congress, in extending this authority, to all public officers, should have used the words 'other public uses' in a less extended sense. The act has been recognized as extending to many uses. Chappel v. United States, 160 U.S. 499, 500,

16 S.Ct. 397, 40 L.Ed. 510; United States v. Beaty, D.C., 198 F. 284; United States v. Gettysburg Electric Ry., 160 U.S. 668, 670, 16 S.Ct. 427, 40 L.Ed. 576.

The Supreme Court, 261 U.S. 581, 43 S. Ct. 442, 444, 67 L.Ed. 809, commented in reviewing the above case as follows: "It would have been futile to authorize the purchase of an essential part of a great project, withholding power to condemn, and so leave it within the power of the owner to defeat the program by demanding a price in excess of $65,000 or by refusing to sell at all. The argument is without force."

Also in United States v. Beaty, supra, we find the followng discussion in respect to the word "purchase" [198 F. 286]: "1. As briefly as possible I shall dispose of the contention founded on the use of the word 'purchase' in the appropriation act of 1911. When used in a statute, the word 'purchase' is frequently held to include any method of acquisition other than by descent. 7 Words & Phrases, First Series, p. 5853. To construe the word here to mean only acquisition by buying, we must assume that Congress had in mind the method of acquisition rather than the general purpose to acquire. The mere use of the word 'purchase'—which may have been used in its technical sense—is not to my mind a sufficient reason for such assumption. If, as we must, we give the members of Congress credit for a reasonable knowledge of human nature, they must be assumed to have known that to restrict acquirement to voluntary sales by the owners would most probably defeat the chief purpose for which the appropriation was made. However, it seems to me that the first section of the act of 1888, supra, makes further discussion unnecessary. The very purpose of that section was to authorize condemnation whenever, theretofore or thereafter, an act of Congress authorized land to be 'procured' for public use. Surely no broader word than 'procure' could have been used."

A further discussion of procurement or acquisition by purchase having a bearing upon the issues here is found in People v. Superior Court, 10 Cal.2d 288, 73 P.2d 1221, at pages 1224 and 1225.

From an examination of the statutes quoted in the light of the authorities referred to, and also other authorities which the court has considered, it seems very probable that the language of the statute authorizing procuring space by lease on such terms and for such period not in excess of five years as may be deemed in the public interest would also include the acquirement of such space by condemnation proceedings in the event it was deemed necessary or advantageous to the Government to do so, where as in this case the owner or trustee refused to re-rent the office space required by the Government and had in fact leased the premises to other persons and had to that extent threatened eviction of the aforesaid Government agency. If the law provides for the acquirement or procurement of real estate by purchase or otherwise, would it not also include a procurement or acquisition of a lesser estate such as a leasehold interest, described in the books as a chattel real? Acquiring a leasehold interest in a part of a building affixed to the realty is in a sense a purchase of the leasehold interest for use for a fixed period and price agreed upon by the parties. It seems quite clear to the court that the language used in the statutes would comprehend the procurement of property by lease as well as by purchase in considering the right to undertake condemnation proceedings.

Authority of the sovereign to exercise the right of eminent domain seems to extend to almost every species of property within its jurisdiction and to every kind and degree of interest providing there is statutory authority to support such a proceeding. It seems clear that the Government under the law and the facts presented in this case would have the right to seek the necessary space above-described through condemnation proceedings.

Counsel for both sides have informed the court that there is now a probability that other suitable quarters may be available soon for housing this Government agency, knowledge of which became known after the commencement of this suit, and which may result in a settlement of this controversy if such quarters should be accepted.

But whether accepted or not Commissioners in due course will be appointed to award just compensation to defendants.

Important issues are involved in this suit and it is to be hoped that they may be definitely and finally settled by a higher tribunal consisting of several learned Jurists. If the language in question here is used in a limited sense, and means that the Government can procure such quarters for its agencies only by negotiation and agreement, then decision by a higher authority will afford definite guidance in the future.

Accordingly in the opinion of the court the motion to dismiss should be overruled and denied, and such is the order herein.